UNITED STATES of America,
Plaintiff-Appellee,

v.

Jack BILLINGSLEY, Defendant-Appellant.

No. 72–1645.

United States Court of Appeals,
Sixth Circuit.

Feb. 21, 1973.

**64**

---

Ivan E. Barris, Detroit, Mich., for defendant-appellant.

James W. Russell, Asst. U. S. Atty., for plaintiff-appellee; Ralph B. Guy, Jr., U. S. Atty., Flint, Mich., on brief.

Before PECK and MILLER, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

PECK, Circuit Judge.

The appellant was tried before a jury and convicted of a violation of 18 U.S.C. § 1951, known as the Hobbs Act, which amended the Anti-Racketeering Act, for forcing the hiring of unwanted and superfluous workers by threatening a work stoppage. The case arose from an incident growing out of the construction of a warehouse in Flint, Michigan, to be built directly under some high tension lines which ran perpendicular to the length of the warehouse. Six high tension lines crossed the warehouse, each one of which carried 138,000 volts of electricity.

The construction company, the W. H. Mechem Company, arranged in advance with the power company to de-energize the three lines closest to that portion of the warehouse directly beneath the high tension wires. On the Sunday morning when this work was to be done, the appellant, the business agent of the union local, whose duties included allocation of manpower, arrived at the job site with about ten experienced journeymen iron-workers. He had a conversation with Dewey Mechem, the job manager, which formed the basis for the appellant's eventual conviction.

Of the 12 ironworkers on this job, one was a "book man" (an experienced journeyman tradesman) from another local, and 11 were "permit men" (available men who were given permits to work by the business agent of the local union); permit men are less experienced than book men. Mechem testified that the appellant stated that unless he hired five of the men with him he would shut the job down by causing a labor dispute. The appellant testified that he requested, out of a concern for safety, that five journeymen ironworkers be hired because of their greater experience. The five men were hired, although a foreman testified that he had to shut down a crane at noon because he could not get any work out of the five men hired at the insistence of the appellant. In addition, evidence was introduced which tended to show that the men with the appellant had been drinking prior to the time they arrived at the job site.

At trial, the central theory of the defense was that the appellant was acting in his capacity of business agent for the union local and was motivated by a concern for the safety of the men. Accordingly, the appellant contends that when the District Court agreed to give the government's proposed instruction No. 1:

"I charge you that under the statute it is not necessary that Mr. Billingsley received any direct benefit; as used in the statute, the term extortion includes obtaining from any employer by the use of actual or threatened force, violence and fear, money in the form of wages to be paid to employees for imposed and unwanted services."

the defense was entitled to have its proposed instruction No. 3 given to the jury. The appellant argues that this instruction sets out the accepted principle

that the Hobbs Act does not curtail legitimate labor demands:

"Ladies and gentlemen of the jury, the anti-racketeering statute under which the charges are based has no reference or bearing on action by a labor leader, honestly acting and representing members of his union. It has reference to and bears on interference with interstate commerce by the compulsory payment of money extorted by a labor leader. The act clearly is protective to labor organizations, and labor members and their membership, as it is to employers."

█ The gravamen of the appellant's objection is that the government's instruction fails to state that the Hobbs Act does not prohibit all demands pertaining to a labor dispute, but only prohibits those demands that are motivated solely by an intent to commit extortion. The government's position is that since this theory of the defense was set forth in the general portions of the Court's charge, no specific instruction was required. United States v. Wingo, 394 F. 2d 484 (6th Cir. 1968). The issue, then, is whether the general charge of the Court contained the substance of the requested instruction. In the relevant part of the Court's general instruction, the Court instructed the jury that:

". . . the principal issue before you is the intent with which the defendant threatened to call a work stoppage. The government claims that it was done with the intent and purpose of requiring the Mechem Company to put on and use unwanted and superfluous employees. The defendant claims that is what was done for the purpose of achieving safety in the work operation. As I have already indicated, the burden is upon the government to prove their claim, or theory, beyond a reasonable doubt."

This portion of the charge sets forth the theory of each party clearly and concisely. Other instructions described the

offense in the terms of the statute. It is not alleged that the jury was either confused or misled. It is presumed that the jury was one of average intelligence which could evaluate instructions describing the offense with reference to the statutory language and setting out the contentions of the adverse parties; this jury sat for two days, and, in light of this and other instructions, must be presumed to have known the elements of the offense with which the defendant was charged and the theories of the defense and the prosecution. United States v. Malfi, 264 F.2d 147, 151 (3d Cir.), cert. denied, 361 U.S. 817, 80 S.Ct. 57, 4 L.Ed.2d 63 (1959); United States v. Gordon, 242 F.2d 122, 126–127 (3d Cir. 1957).

█ In addition, the denial of a proffered request which is in any respect incorrect is not error. United States v. Kelly, 349 F.2d 720, 759 (2d Cir. 1965). Although the appellant's requested instruction stated that legitimate labor activities are not prohibited by the Hobbs Act, it failed to state that the ramifications of legitimate labor activities could become unlawful. See United States v. Green, 246 F.2d 155, 160 (7th Cir. 1957), in which the Court refused to approve a similar instruction that stated only that legitimate labor disputes were not prohibited by the Hobbs Act. Our review of the record of this case and the relevant authorities satisfies us that the appellant was not prejudiced by the Court's refusal to give this instruction.

█ Secondly, the appellant contends that the District Court should not have admitted evidence of the appellant's bad reputation. At least three circuits have considered this question, and each has held that evidence of the defendant's bad reputation is admissible in a Hobbs Act prosecution to show that the victim of the threats acted out of fear and that the victim's fear was reasonable. United States v. Tropiano, 418 F.2d 1069 (2d Cir. 1969), cert. denied, 397 U.S. 1021,

90 S.Ct. 1258, 25 L.Ed.2d 530 (1971); Carbo v. United States, 314 F.2d 718 (9th Cir. 1963), cert. denied, 377 U.S. 953, 84 S.Ct. 1625, 12 L.Ed.2d 498 (1964); Callanan v. United States, 223 F.2d 171 (8th Cir.), cert. denied, 350 U. S. 862, 76 S.Ct. 102, 100 L.Ed. 764 (1955). The appellant asks that this Court decline to follow these decisions since there is a strong possibility that a defendant will be convicted on the evidence of his bad reputation alone.

■ We have considered the appellant's contentions, and the decisions of the Second, Eighth and Ninth Circuits and we find that the reasoning of these decisions is the more persuasive. These decisions rest upon the fact that extortion is an essential element of the Hobbs Act and to prove extortion, it is essential to show that there was a generation of fear in the victim. The reasonableness of actual or anticipated fear is a vital element in these cases, and the reputation of the defendant therefore becomes relevant since such a reputation frequently conveys a tacit threat of violence. Accordingly, the reputation of the defendant is admissible not to show that he was a bad man and likely to commit a crime, but to indicate that the threats of the defendant were not idle. We agree with the other circuits which have considered this question and hold that the evidence of the bad reputation of the defendant is admissible for the limited purpose of showing the fear and its reasonableness caused by the threats of the defendant.

■ The appellant next contends that if the reputation evidence is admissible, as we hold, a reversal is nevertheless required in this case because the Court failed to give a cautionary instruction to the jury limiting the use of this potentially prejudicial evidence. However, this issue is not properly before this Court because the defense counsel failed to bring to the Court's attention its failure to give such an instruction. The record shows that the Court indicated at the time of his ruling

to admit the reputation evidence that a cautionary instruction would be given as requested by the defense counsel; the instruction was not given, and no objection to this oversight was made. A party may not assign as error any portion of the charge or omission from the charge unless he objects thereto before the jury retires. Rule 30, F.R.Crim. Proc., Wilson v. Wiman, 386 F.2d 968 (6th Cir. 1967), Cowen v. United States, 241 F.2d 105 (6th Cir. 1957). The purpose of this rule is to require the counsel to act in time to give the judge an opportunity to correct his error. Rucker v. United States, 92 U.S.App.D.C. 336, 206 F.2d 464 (D.C.Cir.1953). The relatively slight nature of the reputation evidence in this case precludes a finding of plain error which would allow us to consider the question in the absence of a timely objection. In *Carbo* and *Tropiano, supra,* the reputation evidence involved acts of violence and former criminal acts, and limiting instructions were given by the Court, and were upheld on appeal. In this case, however, the reputation evidence was only that the defendant was "sort of domineering, dictating to contractors," and the prejudicial nature of this testimony is so slight that the failure to give a cautionary instruction does not constitute plain error.

■ The appellant contends that the trial court failed to instruct the jury that an essential element of the Hobbs Act is that the victim must be placed in either economic or physical fear. However, since no objection to this alleged error was made by defense counsel, we must first consider whether the oversight amounts to plain error prejudicial to the appellant. The omission of an allegedly necessary instruction does not constitute plain error if the instructions viewed in their entirety adequately protected the defendant. United States v. Harris, 458 F.2d 670, 678 (5th Cir. 1972). In the general charge to the jury concerning the statutory offense in issue, the Court said:

"The term 'extortion' means the obtaining of property from another in-

duced by wrongful use of force, violence, or fear. The word fear should be given its ordinary meaning as including fear of economic loss. It is not limited to loss by injury, and hence the threat of a work stoppage would come within the definition of an economic loss of the victim."

In addition, we note that the existence of fear in the mind of the victim was not placed in issue by the defense either during the trial or in closing argument. When the evidence and defense counsel's argument do not raise an element of the crime as an issue in the case, and the trial court is not apprised that it must prepare a specific instruction to cover the issue, the failure of the court should not be treated as plain error. United States v. McKenzie, 409 F.2d 983 (2d Cir. 1969). There is nothing in the record of this case that would lead us to believe that the omission of a specific instruction on this point constituted reversible error.

The appellant also contends that the Court should have permitted him to reopen the case for the limited purpose of introducing additional evidence concerning the height of the crane relative to the overhead wires. Inasmuch as this decision is vested in the sound discretion of the trial court, and inasmuch as courts should be extremely reluctant to grant reopenings, and inasmuch as evidence of the height of the boom was available to the defense and was introduced in evidence during the trial, we cannot find that the District Court abused its discretion in denying the appellant's motion to reopen the case for this purpose. United States v. Wade, 364 F.2d 931 (6th Cir. 1966), Eason v. United States, 281 F.2d 818 (9th Cir. 1960).

We have considered the remaining contentions of the appellant, including the contention that a new trial should have been granted, and we find that they are without merit. The judgment of the District Court is affirmed.