UNITED STATES of America, Plaintiff-Appellee,

v.

John Charles BLANKENSHIP, Defendant-Appellant.

No. 84–3737.

United States Court of Appeals, Sixth Circuit.

Argued July 11, 1985.

Decided Oct. 25, 1985.

Richard J. Marco, argued, Medina, Ohio, for defendant-appellant.

Thomas Bauer, U.S. Atty. Office, Akron, Ohio, Roger M. Synenberg, argued, Cleveland, Ohio, for plaintiff-appellee.

Before LIVELY, Chief Judge and MERRITT and CONTIE, Circuit Judges.

LIVELY, Chief Judge.

The principal issue raised by this appeal is the extent to which the government may use evidence of "other crimes, wrongs, or acts" to establish predisposition on the part of a defendant who admits the acts charged in the indictment but relies on a defense of entrapment. The appeal also raises the question of when a trial court

may permit the prosecution to reopen its case after it has rested. Finally, the appeal raises the issue of sufficiency of the evidence to support a conviction on the charge of dealing in firearms.

## I.

John Charles Blankenship was found guilty by a jury on all four counts of an indictment charging firearms offenses. One count charged him with receiving a firearm while under a disability as a previously convicted felon, two counts charged him with possessing a firearm while under the same disability and a fourth count charged him with engaging in the business of dealing in firearms. Blankenship pled not guilty but never denied the transactions upon which the charges were based. Though the defendant did not testify, his attorney maintained from the outset that the activities of an agent of the Bureau of Alcohol, Tobacco and Firearms (ATF) and an informant constituted entrapment.

## A.

The evidence disclosed that the Wadsworth, Ohio police were investigating a series of burglaries and called in the ATF because firearms were involved. Agent John Berareducci of the ATF acted in an undercover role and Ron Carter was the ATF case agent. Carter testified that he met the informant Albert Thompson at the Wadsworth police headquarters. Thompson was under investigation in connection with the Wadsworth burglaries and agreed to cooperate upon being promised he would not be subjected to a federal prosecution on charges stemming from the burglaries.

Thompson was fitted out with a body microphone on November 21, 1983 and dispatched to find and talk with one of the burglary suspects. He testified that as he passed Blankenship's trailer on the way to the suspect's residence, Blankenship "waved me down." Thompson did not stop, but continued on his way. The person he was seeking was not at home and Thompson returned by the same route. He stated that on the way back Blankenship

"flagged me down again." Though Thompson had not anticipated seeing Blankenship, the officers who were monitoring his recorder from a nearby automobile advised him to stop.

Thompson and Blankenship then engaged in a lengthy conversation which was recorded. Blankenship was unemployed, but traded in various kinds of property and bought and sold at flea markets. Much of the discussion concerned "junk" which Blankenship had on the premises, but there were many references to firearms. Blankenship told Thompson that before it got "hot" in the area he was getting 10 or 15 guns a week. When Thompson said he might be able to get some guns, Blankenship replied that it might take about two days to get rid of them. There were no transactions that day, but just before Thompson left, Blankenship told him to come back in a few days because "stuff may be back from West Virginia."

The tape of the November 21 meeting also contained statements by Blankenship that he had bought roto tillers knowing they were stolen and had stolen several power lawn mowers and a load of lumber. When this tape was offered in evidence together with a transcript of its contents, Blankenship's attorney objected, arguing that much of the material on the tape was not relevant and was highly prejudicial since it related to other unrelated crimes. The court reminded defense counsel that he had possession of copies of the tapes for a month and had made no request for redaction. Thus the court had not had a prior opportunity to consider the objection in light of the tape's contents. Without ruling specifically that there had been a waiver, the district court overruled the objection. The tape was played in its entirety for the jury who were also provided transcripts of the contents.

The prosecution then offered recordings of taped conversations between Thompson and Blankenship which took place on December 15, 1983 and January 11 and 17, 1984. Counsel for Blankenship objected, citing specific references in the tapes to

proposals by Blankenship that Thompson and Berareducci might steal valuable coin collections from homes which he could identify for a cut of the proceeds. In response the prosecutor argued that such evidence was relevant to the issue of Blankenship's predisposition to deal in firearms. The objections were overruled and the tapes were played. In addition, over defense objections, Thompson and Berareducci were permitted to testify at length concerning the conversations with Blankenship about possible burglaries. Both testified that Blankenship told them about silver coin collections and pointed out the houses where they were kept as the three rode around in Blankenship's van. These witnesses also testified that Berareducci purchased three weapons from Blankenship on January 11 and a shotgun on January 17.

### B.

To establish Blankenship's disability to receive or possess firearms the government introduced fingerprints of a John Charles Blankenship taken on June 7, 1974. The witness was a deputy sheriff of Medina County, Ohio, the officer who had taken the prints. The next witness, a deputy United States Marshal, produced fingerprints which he took of a "John C. Blankenship" on January 31, 1984 in connection with the charges in the present case. He identified the defendant as the person whose prints he had taken. A fingerprint identification officer from the Akron Police Department then testified that the 1974 and 1984 prints were from the same person.

Before closing the government introduced several documents. Among the documents was an authenticated copy of a journal entry of April 14, 1975 from the Medina Court of Common Pleas which showed that "Charles Blankenship" was charged with theft, pled no contest and was found guilty of receiving stolen property and given a suspended sentence of one to five years. Counsel objected on the ground that the document did not identify the defendant. Another document was an

arrest record of John Charles Blankenship on a charge of grand theft. Defense counsel again objected on the ground that the record failed to disclose a conviction. Both exhibits were admitted and the prosecution rested.

Defense counsel then made a motion for a judgment of acquittal pursuant to Rule 29(a), Fed.R.Crim.P.:

> **(a) Motion Before Submission to Jury.** Motions for directed verdict are abolished and motions for judgment of acquittal shall be used in their place. The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses. If a defendant's motion for judgment of acquittal at the close of the evidence offered by the government is not granted, the defendant may offer evidence without having reserved the right.

Counsel argued that the evidence was insufficient on the three counts of receiving and possessing firearms because no previous felony conviction had been established and on the remaining count because no course of "dealing" in firearms had been proven. In response the prosecutor argued that the evidence had shown that Blankenship was convicted of receiving stolen property and that there was abundant evidence of Blankenship's "dealing" activities. Nevertheless, before the district court ruled on the motion for acquittal the government attorney made a motion to be permitted to reopen his case.

All of the foregoing, including the announcement that the government rested its case, took place out of the presence of the jury. Over strenuous objection, the district court granted the government's motion to reopen. The government then presented three witnesses who identified Blankenship as the person convicted in the Medina court following his arrest on June 7, 1974. The district court denied a renewed motion for

acquittal after the government announced in the presence of the jury that it rested. The jury conviction on all four counts of the indictment followed after the defendant chose not to testify or present evidence.

## II.

### A.

The Federal Rules of Evidence permit the admission of evidence of prior crimes and other bad acts of a defendant for a number of purposes, but not "to prove the character of a person in order to show that he acted in conformity therewith." Rule 404(b) provides:

> **(b) Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

This is actually a rule of inclusion rather than exclusion, since only one use is forbidden and several permissible uses of such evidence are identified. The list of permissible uses is not exclusive. Courts have recognized other permissible uses of such evidence; for example, to show a common scheme or plan. *United States v. Burkley,* 591 F.2d 903, 920 (D.C.Cir.1978), *cert. denied,* 440 U.S. 966, 99 S.Ct. 1516, 59 L.Ed.2d 782 (1979).

■ When the prosecution claims such evidence is offered for a permissible purpose, the trial court must make two inquiries before admitting the evidence. First, it must determine that the evidence is relevant; that is, the evidence must relate to a matter which is "in issue," and must deal with conduct substantially similar and reasonably near in time to the offenses for which the defendant is being tried. *United States v. Ring,* 513 F.2d 1001, 1005 (6th Cir.1975). Even if the relevancy criteria are met a trial court has discretion to exclude the evidence if "its probative value is substantially outweighed by the danger of unfair prejudice...." Rule 403, Fed.R.Evid.; *United States v. Largent,* 545 F.2d 1039, 1043 (6th Cir.1976), *cert. denied,* 429 U.S. 1098, 97 S.Ct. 1117, 51 L.Ed.2d 546 (1977); *Ring,* 513 F.2d at 1005; *Burkley,* 591 F.2d at 920.

■ A defense of entrapment is often countered by evidence of other crimes and wrongs in order to show the defendant's predisposition to commit the offense or offenses charged. This is a permissible use of such evidence not explicitly referred to in Rule 404(b), but generally recognized. *Burkley,* 591 F.2d at 921. As the court stated in *United States v. Salisbury,* 662 F.2d 738, 741 (11th Cir.1981), *cert. denied,* 457 U.S. 1107, 102 S.Ct. 2907, 73 L.Ed.2d 1316 (1982), "The introduction of evidence of extrinsic offenses is a reliable method of proving the criminal predisposition needed to rebut the allegation or inference of entrapment." However, such evidence is not admissible to prove a predisposition to commit criminal acts generally. That would be proof of bad character for the purpose of showing that the defendant acted in accordance with such general criminal propensity in the instance charged. The use of such evidence to show predisposition is permitted only when the other crimes are of the same nature as those charged. This rule was clearly set forth in *United States v. Bramble,* 641 F.2d 681, 682 (9th Cir.1981), *cert. denied,* 459 U.S. 1072, 103 S.Ct. 493, 74 L.Ed.2d 635 (1982):

> The rule in this circuit is that "where entrapment is in issue evidence of prior crimes is not relevant unless it tends to prove that defendant was engaged in illegal operations in some way similar to those charged in the indictment." *United States v. Segovia,* 576 F.2d 251, 252 (9th Cir.1978), quoting *De Jong v. United States,* 381 F.2d 725, 726 (9th Cir.1967).

We agree with this statement. Thus the requirement set forth in *Ring* that the other crimes be substantially similar to the offenses charged is a limitation on the admissibility of such evidence in entrapment

cases as well as in criminal prosecutions where other defenses are raised.

### B.

■ Considered in light of the foregoing principles, it was error to admit evidence of Blankenship's earlier thefts of property and his proposals for burglarizing houses containing valuable coin collections. This evidence, unlike that related to earlier firearms transactions and discussion of possible future dealings in weapons, did not satisfy the requirement of substantial similarity to the offenses charged. It merely demonstrated the general criminal character of Blankenship. The government appears to argue that such a use of "other crimes" evidence is permissible where a defendant claims entrapment. It states in its brief in this court that evidence of Blankenship's voluntary solicitation of Thompson and Berareducci to commit burglaries and cut him in gave "insight into the sort of person the defendant is." Proof that the defendant has committed thefts in the past and is willing to share in the proceeds of a projected burglary has little if any probative value with respect to the issue of his predisposition to receive, possess or deal in firearms. On the other hand, this evidence is fraught with danger of undue prejudice. Thus it fails both tests for the admissibility of other crimes evidence.

■ The government also argues that Blankenship waived his objection to the evidence by waiting until the tapes were offered to object rather than making an earlier motion to edit them and remove the materials which he claimed to be prejudicial. We know of no rule which requires an objection to evidence prior to the time it is offered. A motion *in limine* might have been preferable in order to save time, but the very specific objection of defense counsel at the time the tapes were tendered for jury listening was timely. This was not a motion to suppress evidence which Rule 12(b)(3), Fed.R.Crim.P., requires to be made prior to trial. It was a motion requesting the district court to find that portions of

the tendered evidence were inadmissible under Rule 404(b) of the Federal Rules of Evidence. Even if objection to the tapes had been waived, there can be no doubt that specific and timely objections were made to the testimony of Thompson and Berareducci about the proposed burglaries. This testimony was more extensive and particularized than the recorded conversations. The admission of this other crimes evidence requires reversal of the conviction.

### III.

### A.

■ Blankenship also contends the trial judge abused his discretion by not ruling on his first motion for acquittal and permitting the government to reopen its case in chief after resting. The decision on reopening is committed to the sound discretion of the trial judge and this court has stated that "courts should be extremely reluctant to grant reopenings." *United States v. Billingsley,* 474 F.2d 63, 67 (6th Cir.), *cert. denied,* 414 U.S. 819, 94 S.Ct. 42, 38 L.Ed.2d 51 (1973). Reopening is often permitted to supply some technical requirement such as the location of a crime—needed to establish venue—or to supply some detail overlooked by inadvertence. *United States v. Hinderman,* 625 F.2d 994, 996 (10th Cir.1980). In *United States v. Kolenda,* 697 F.2d 149 (6th Cir.1983), we approved reopening after the government had rested in order to show that the definition of Schedule II controlled substances included cocaine. Blankenship argues there was nothing inadvertent about the government's failure to establish prior to closing its case that he had been convicted previously of a felony. Rather, he contends, the prosecutor just failed to bring forth the evidence required to establish an essential element of the offenses charged in three counts of the indictment. Under these circumstances, he asserts, the district court was required by Rule 29(a) to grant his motion for acquittal.

### B.

Judge John D. Martin stated the rule with respect to reopening in his customary direct fashion in *Henry v. United States,* 204 F.2d 817, 820 (6th Cir.1953):

There is no iron-bound, copper-fastened, double-riveted rule against the admission of evidence after both parties have rested upon their proof and even after the jury has entered upon its deliberations. Considerable latitude in discretion is vested in the trial judge in this respect.

In exercising his discretion the trial judge must consider a number of factors. These considerations were well summarized in *United States v. Thetford,* 676 F.2d 170, 182 (5th Cir.1982), *cert. denied,* 459 U.S. 1148, 103 S.Ct. 790, 74 L.Ed.2d 996 (1983):

A motion to reopen is clearly within the discretion of the trial court. In exercising its discretion, the court must consider the timeliness of the motion, the character of the testimony, and the effect of the granting of the motion. The party moving to reopen should provide a reasonable explanation for failure to present the evidence in its case-in-chief. The evidence proffered should be relevant, admissible, technically adequate, and helpful to the jury in ascertaining the guilt or innocence of the accused. The belated receipt of such testimony should not "imbue the evidence with distorted importance, prejudice the opposing party's case, or preclude an adversary from having an adequate opportunity to meet the additional evidence offered." *United States v. Larson,* 596 F.2d 759, 778 (8th Cir.1979).

The most important consideration is whether the opposing party is prejudiced by reopening. One of the critical factors in evaluating prejudice is the timing of the motion to reopen. If it comes at a stage in the proceedings where the opposing party will have an opportunity to respond and attempt to rebut the evidence introduced after reopening, it is not nearly as likely to be prejudicial as when reopening is granted after all parties have rested, or even after the case has been submitted to the jury. Where, as in this case, reopening is permitted after the government has rested its case in chief, but before the defendant has presented any evidence, it is unlikely that prejudice sufficient to establish an abuse of discretion can be established. *Cf. United States v. Ard,* 544 F.2d 225 (5th Cir.1976).

■ Though he objected to reopening and moved for a mistrial, defense counsel in the present case did not seek a continuance or even a recess for the purpose of meeting the evidence presented after reopening. He could not have been surprised by the evidence since it was nothing but a more positive identification of Blankenship as the person previously convicted of receiving stolen goods. Considering all the circumstances of this case we conclude that Blankenship was not prejudiced and that the district court did not abuse its discretion in permitting the government to reopen its case. The situation here is very similar to that in *United States v. Green,* 757 F.2d 116, 119 (7th Cir.1985), where reopening was permitted for a more specific identification of the defendant whose identity could have been inferred from the testimony and exhibits presented during the case in chief.

### IV.

■ Blankenship also contends that he was entitled to acquittal on the charge that he knowingly engaged in the business of dealing in firearms without being licensed. He argues that the evidence established a "single sales transaction covering two dates." He relies primarily on *United States v. Tarr,* 589 F.2d 55, 59 (1st Cir. 1978), where the court held that a single transaction is not enough to establish a course of conduct which constitutes dealing in firearms. Of course, the jury had more than the evidence of the sales for a profit on January 11 and 17. In the taped conversations Blankenship stated that he needed a couple of guns, that he had received 10 to 15 per week before the "heat" was turned on and that he had places outside of Ohio where he could dispose of stolen guns. In

*United States v. Day*, 476 F.2d 562, 567 (6th Cir.1973), we approved the following statement in the trial court's instructions:

> Dealer ... means one that is engaged in any business of selling, repairing or pawning firearms and that business is that which occupies the time, attention and labor of the man for the purpose of livelihood or profit.

In *United States v. Hamilton*, 689 F.2d 1262 (6th Cir.1982), *cert. denied sub nom., United States v. Salisbury*, 459 U.S. 1117, 103 S.Ct. 754, 74 L.Ed.2d 971 (1983), we followed *Day* in a case involving two transactions. In its totality the evidence satisfied this court's requirement for conviction as one engaged in the business of dealing in firearms.

The judgment of the district court is reversed, and the case is remanded for a new trial.

MERRITT, Circuit Judge, dissenting.

I agree with the panel opinion in all respects except the holding that the evidence of the defendant's involvement in other crimes for profit is not admissible to prove the defendant's predisposition to deal in firearms unless the other crimes are very similar to the charged crimes.

The panel's approach of requiring substantial similarity between the other crimes and the charged crimes makes sense for some uses of the other crimes evidence. For example, if the other crimes evidence is introduced to show a common scheme or plan or to show absence of accident, the other crimes evidence has no probative value on these issues unless the similarity between the crimes is great. However, it does not follow that the same high degree of similarity between the other crimes and charged crimes should be required no matter what purpose the other crimes evidence serves. Although evidence of past dealings in stolen property may have very little probative value on the issue of whether a defendant had accidentally received an illegal firearm, evidence of past dealings in stolen property has a greater probative value on the issue of predisposition to illegally deal in firearms. The panel's approach, and that of the cases cited, applies a rule that is sound in other contexts to a situation in which the rule's basis does not apply. Note that *United States v. Ring*, 513 F.2d 1001, 1005 (6th Cir.1975), which the panel cites in support of its substantial similarity requirement, and the cases cited by *Ring*, deal with uses of other crimes evidence other than to prove a defendant's predisposition.

The starting point for analysis must be that "[A]ll relevant evidence is admissible," except as otherwise restricted by the Federal Rules of Evidence. Fed.R.Evid. 402. When a criminal defendant pleads the defense of entrapment, he places his predisposition to commit the charged crime in issue. Thereafter, any evidence having any tendency to make the existence of his predisposition to commit the charged crime more probable than it would have been without the evidence, *see* Fed.R.Evid. 401, is relevant and therefore admissible unless limited by the evidence rules.

In the case at bar, the defendant is charged with the crimes of receiving and possessing a firearm while being a convicted felon and of illegally engaging in the business of dealing in firearms. The other crimes evidence consists of the defendant's admissions that he had stolen lawn mowers and lumber and had received stolen tillers and of his solicitation of the ATF agents to commit burglary. The sole question to be asked in determining whether the other crimes evidence is relevant is: Does evidence that the defendant had received stolen property, stolen other property, and solicited others to steal property have any tendency to make the existence of his predisposition to receive and possess firearms and to engage in the business of illegally dealing in firearms any more probable than it would be without the evidence?

The other crimes evidence does have this effect. The evidence that the defendant would commit these other crimes for profit does have a tendency to support the idea that he would be predisposed to illegally deal in firearms for a profit. This evidence

is not conclusive proof of predisposition, but it does have some probative value on the issue. Consequently, the other crimes evidence is admissible unless forbidden by some other provision of the Federal Rules of Evidence.

The search of the evidence rules for a provision limiting the admissibility of this other crimes evidence must begin with Rule 404(b). The only limiting provision in Rule 404(b) is that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." In the present case the other crimes evidence is not being admitted to prove that, in conformity with a bad character, the defendant committed the charged crimes. Indeed, he has never denied committing the crimes. Rather, its admission goes to his willingness to commit the crime—whether it resulted from the exercise of a free will. It goes to the question of predisposition, which the defendant himself has placed in issue.

There is a flaw in the panel's logic in construing the meaning of Rule 404(b)'s limiting provision. The opinion states that "such evidence is not admissible to prove a predisposition to commit criminal acts generally. That would be proof of bad character for the purpose of showing that the defendant acted in accordance with such general criminal propensity in the instance charged." *United States v. Blankenship*, 775 F.2d 735, 739 (6th Cir.1985). If, as the panel believes, Rule 404(b) forbids the use of other crimes evidence to show that when a defendant admittedly committed a crime he was acting in accordance with a general predisposition to commit crime, why, as the panel believes, would the rule allow the use of other crimes evidence to show that when a defendant committed a crime he was acting in accordance with a specific predisposition to commit the very crime involved? If the former is the impermissible use of evidence of bad character, the latter must also be an impermissible use of evidence of a specific trait of bad character. This inconsistency demonstrates the flaw in the panel's relevancy argument.

The second rule that might bar the admission of this other crimes evidence is Rule 403. The pertinent limitation of Rule 403 is that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. The probative value of other crimes evidence normally varies with the similarity of the other crimes to the charged crime. However, the probative value of the other crimes evidence on the issue of predisposition can be fairly great without the crimes being highly similar. The similarities between the other crimes and the charged crimes here are (1) both were nonviolent crimes engaged in for profit and (2) both were crimes dealing with possession of items that defendant was not allowed to possess. The probative value of this other crimes evidence on the issue of the defendant's predisposition to commit the charged crimes is substantial.

On the other hand, the prejudicial effect of this evidence is not great. It does not *substantially* outweigh the evidence's probative value, as is required for exclusion under Rule 403. The usual unfair prejudice of which evidence of other crimes creates a danger is not present here. Normally, the fear is that because the jury believes a defendant should be punished for his other crimes, it will find him guilty of the charged crime even if there is insufficient evidence that he committed the charged crime. In the case at bar, the defendant has admitted committing the charged crime.

I would hold that so long as the other crimes evidence shows a predisposition to commit nonviolent crime for profit it is admissible on the issue of entrapment to show a defendant's predisposition to commit another nonviolent crime for profit. On other facts, Rule 403's balance against possible prejudice might require the outcome reached by the panel, but in this case the analytical shortcomings of the panel's approach cause a result that is not justified by the Federal Rules of Evidence.