**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0719n.06
Filed: November 20, 2008

**No. 07-3748**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES,                                    )
                                                  )
     Plaintiff-Appellee,                     )
                                                  )
v.                                                )   APPEAL FROM THE UNITED STATES
                                                  )   DISTRICT COURT FOR THE
LESEAN ROBERTS,                                   )   NORTHERN DISTRICT OF OHIO
                                                  )
     Defendant-Appellant.                    )

Before: KENNEDY, SUTTON and McKEAGUE, Circuit Judges.

SUTTON, Circuit Judge.   A federal jury convicted Lesean Roberts of several cocaine-distribution and possession offenses.  Because Roberts' challenges to his conviction and sentence are unconvincing, we affirm.

I.

On the afternoon of July 27, 2006, Michael Tucker called Roberts to express his interest in purchasing some crack cocaine.  They arranged to meet, and at roughly 11 p.m. that evening Roberts delivered the drugs to Tucker's house.  Because Tucker planned to re-sell the drugs later that evening, Roberts sold the drugs to him "on consignment," allowing Tucker to defer payment until he had completed the sale.  JA 151.  Roberts told Tucker that he would collect payment for the drugs "in the morning because [Roberts] was going to bed." *Id*.  Tucker, who had unknowingly arranged

to sell drugs to a confidential police informant, was arrested soon after the exchange with Roberts. Officers from the Westlake Police Department recovered crack cocaine from the hubcaps of Tucker's minivan.

That night, Tucker signed a confession and named Roberts as his supplier. Tucker told Detective Dave Carney that "Roberts would be expecting a phone call [from Tucker] in the morning." The next morning, Detective Carney returned Tucker's phone to him and allowed him to make several recorded phone calls to Roberts. In one phone call, Tucker promised to pay the money he owed "from yesterday." JA 350. He also made several requests for a large amount of drugs. Roberts offered to check his inventory and suggested that Tucker would have to be satisfied with a smaller amount. In another recorded call, Tucker asked Roberts to meet at "Depot," and Roberts agreed. JA 352.

Later that day, Tucker accompanied officers from the Westlake Police Department to Home Depot at the appointed time. After Roberts arrived, he parked, exited his vehicle and stood outside of Home Depot. After Tucker identified Roberts and his vehicle, Officer Charles Escalante detained Roberts and checked him for weapons. Upon confirming that Roberts did not have any drugs on him, Officer Escalante transferred him to the other officers and approached Roberts' car. Officer Escalante looked through the driver's side window and saw—without "any difficulty," JA 177—a plastic "grocery bag" that contained "what to [him] looked like bundles of cocaine," JA 174. Officer Escalante returned to Roberts and put him under arrest. Officer Escalante then "[o]btained car keys from Mr. Roberts' pocket and returned to the car." JA 175. Officers retrieved "approximately 125

grams of powder cocaine" from the bag in the front of the car, *id*., and "approximately 15 grams" of crack cocaine from behind the passenger seat of the car, JA 176.

Roberts was charged with (1) distributing 50 grams or more of crack cocaine, *see* 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii) and 18 U.S.C. § 2; and (2) possessing with intent to distribute 20 grams or more of crack cocaine and 196 grams of powder cocaine, *see* 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii), (b)(1)(C). Before trial he filed a motion to suppress all evidence seized from his vehicle. The motion to suppress was denied, and he was convicted on both counts. He was sentenced to life for the first count and ten years for the second count, with the terms to run concurrently.

## II.

### A.

Roberts first argues that the district court erred in denying his motion to suppress evidence seized from his car. We review the district court's factual findings for clear error and its legal conclusions de novo, and in reviewing the denial of a motion to suppress we construe all factual inferences in the government's favor. *United States v. Combs*, 369 F.3d 925, 937 (6th Cir. 2004).

In accordance with the "automobile exception" to the warrant requirement, an officer's warrantless search of a vehicle does not violate the Fourth Amendment if the officer has probable cause to believe that a vehicle contains contraband. *United States v. Ross*, 456 U.S. 798, 807–09

(1982); *see also United States v. Graham*, 275 F.3d 490, 508–11 (6th Cir. 2001). Here, the district court correctly concluded that the officers had probable cause to search Roberts' car.

The police, to start, had probable cause to believe that Roberts was transporting drugs to Home Depot. Tucker arranged in a recorded phone call to purchase drugs from Roberts; the pair arranged to meet at Home Depot; and Roberts arrived at the designated meeting spot and stood outside as if waiting for Tucker. Once Officer Escalante determined that Roberts did not have any drugs on him, the police had still more reason to believe that he had left the drugs in his car. On top of all this, Officer Escalante saw what "looked like bundles of cocaine" through the car window. JA 174.

Roberts does not dispute that the police had probable cause to believe that he was bringing drugs to Home Depot. He argues instead that the police had no right to search his car because they did not know which car was his. But this contention fails to come to grips with the evidence introduced at the suppression hearing. Tucker identified Roberts and his vehicle, and Detective Carney confirmed the point.

B.

Roberts next argues that there was insufficient evidence to support his conviction on count one—namely that he distributed "50 grams or more of a mixture . . . which contains cocaine base." 21 U.S.C. § 841(b)(1)(A)(iii). In reviewing a sufficiency challenge, we ask "whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found

4

the essential elements of the crime beyond a reasonable doubt." *United States v. Collins*, 78 F.3d 1021, 1030 (6th Cir. 1996) (internal quotation marks omitted).

Tucker's testimony alone provides a sufficient basis for upholding this conviction. He testified that (1) on July 27 one of his customers requested four-and-a-half ounces of crack cocaine; (2) four-and-a-half ounces of cocaine is equivalent to around "125 [or] 126" grams, JA 145; (3) Roberts agreed to sell the drugs to Tucker; (4) Roberts delivered the drugs to Tucker at his house; and (5) Roberts sold Tucker the drugs that were found in his hubcaps later that evening.

Other evidence corroborated Tucker's account. Agent Harper, who conducted a "physical examination of Lesean Roberts' phone," confirmed that Roberts and Tucker spoke several times on July 27. JA 199. In the phone conversation between Roberts and his wife, Roberts admitted to seeing Tucker at Tucker's house on the night of the 27th. Roberts also suggested that Tucker owed him money from a transaction on the 27th. And in phone calls recorded on the 28th, Roberts indicated that they had previously arranged to meet that morning, and that Tucker owed him money from the day before.

On appeal, Roberts argues that Tucker was not a credible witness. Maybe so. But that was a call for the jury, not us, to make, particularly given that Tucker's testimony was corroborated by other evidence. *See United States v. Jackson*, 55 F.3d 1219, 1225 (6th Cir. 1995).

C.

Roberts next argues that the district court erred when it allowed the jury to use a transcript as an aid while listening to a recorded telephone conversation at trial.  We ordinarily review such a decision for abuse of discretion, *United States v. Robinson*, 707 F.2d 872, 875–76 (6th Cir. 1983), but because Roberts did not object at trial we review the challenge in this instance only for plain error, *see United States v. Cowart*, 90 F.3d 154, 157 (6th Cir. 1996).

The district court had an adequate basis "to conclude that the transcripts bore a semblance of reliability."  *United States v. Jacob*, 377 F.3d 573, 582 (6th Cir. 2004).  The recording at issue preserved a conversation between Roberts and his wife during Roberts' pretrial detention.  Officer Carlos Carcamo, an employee of the correctional center where Roberts was detained, verified that the transcript was an accurate reflection of the call and that the transcript accurately reflected the recording that was played at trial.  Roberts insists that use of the transcript was error because "the district court judge did not make any explicit findings as to the transcript's accuracy" and because Officer Carcamo did not transcribe the recordings.  Br. at 29.  But we have previously held that a judge need not make express findings about a transcript's accuracy, *see Jacob*, 377 F.3d at 582, and there is no requirement that the witness verifying the transcript's accuracy be the person who transcribed the document, *see United States v. King*, 272 F.3d 366, 374 (6th Cir. 2001).

Any error in allowing the jury to use the transcript at any rate did not affect the outcome of the proceedings.  The district court instructed the jury that the transcript was not evidence, and

Roberts does not contend that the tape was so inaudible that "the transcript[], regardless of the judge's instructions to the contrary, became, in essence, the evidence." *Jacob*, 377 F.3d at 582; *cf. Robinson*, 707 F.2d at 878. Roberts identifies only one alleged error in the transcript used at trial, and his attorney cross-examined Officer Carcamo about the alleged error, and argued at closing that the transcription was inaccurate on that point. *Cf. Jacob*, 377 F.3d at 582. Nor did the jury use the transcript during deliberations. *Cf. King*, 272 F.3d at 374. Any potential error could not plausibly have affected Roberts' substantial rights on this record.

D.

Roberts next argues that the district court erred in allowing testimony about Roberts' previous drug transactions. Although evidence of a defendant's "other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," it may be admitted to prove "intent, . . . knowledge [or] identity." Fed. R. Evid. 404(b). A court may admit other-acts evidence if it bears on "a material issue other than character," and its probative value is not substantially outweighed by its prejudicial impact. *United States v. Copeland*, 321 F.3d 582, 596 (6th Cir. 2003).

Roberts argues that his prior drug transactions had no probative value. We disagree. At trial, Tucker testified that Roberts sold cocaine to him "on consignment" on more than one occasion in 2004, JA 144–45, that on at least one occasion he met Roberts at Home Depot to complete a drug transaction, and that "sometimes" they met at his house to complete drug-related transactions, JA

146. His testimony makes it clear that the earlier transactions "involved the same participants and involved the same mode of operation as was charged in the indictment," *United States v. Feinman*, 930 F.2d 495, 499 (6th Cir. 1991), making them highly probative. Nor was there anything unfairly prejudicial about showing that what Tucker and Roberts did during this drug transaction paralleled the mode of operation of their earlier drug transactions. *Cf. United States v. Clemis*, 11 F.3d 597, 601 (6th Cir. 1993).

E.

Roberts next argues that the district court should not have allowed Agent Joseph Harper, a special agent with the Drug Enforcement Administration, to "translate the conversation between Tucker and Roberts" into language that a typical juror would understand. Br. at 33. More specifically, Roberts charges that Agent Harper was not, and could not have been, qualified as an expert under Federal Rule of Evidence 104, and that Harper mistranslated several terms. But Roberts invited any error on this score when he (through his counsel) elicited this testimony on cross-examination. *See United States v. Ali*, 38 F. App'x 220, 224 (6th Cir. 2002) (holding that there was no error in allowing an FBI agent to testify about the meaning of certain phrases when "it was defense counsel who interrogated [the agent] about the meaning of certain phrases used during the phone calls and about the agent's opinion as to whether the communication involved drug dealing"). "[A] party may not complain on appeal of errors that he himself invited or provoked the court or the opposite party to make." *United States v. Barrow*, 118 F.3d 482, 490 (6th Cir. 1997).

F.

Roberts next argues (1) that his sentence was unreasonable and (2) that his prior state-court convictions did not amount to controlled-substance offenses for the purposes of the career-offender guidelines enhancement. But because Roberts was subject to a mandatory life sentence under 21 U.S.C. § 841(b)(1)(A), and "[b]ecause the district court was bound to impose the mandatory life sentence . . . , any sentencing error would be harmless, as [Roberts] cannot receive a sentence lower than the statutory minimum." *United States v. Wheeler*, 535 F.3d 446, 458 (6th Cir. 2008).

III.

For these reasons, we affirm.