**UNITED STATES of America**

v.

**Gaetano VASTOLA, Appellant.**

**UNITED STATES of America**

v.

**Elias SAKA, a/k/a "Lew," Appellant.**

**Nos. 91–5727, 91–5771.**

United States Court of Appeals, Third Circuit.

Argued Oct. 27, 1992.

Decided Feb. 18, 1993.

Sur Petition for Panel Rehearing May 12, 1993.

Herald P. Fahringer (Argued), Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, New York City, for appellant Vastola.

Barry M. Fallick, Bobbi Sterhelm (Argued), Rochman, Platzer, Fallick & Rosmarin, New York City, for appellant Saka.

Edna B. Axelrod, Marion Percell (Argued), Office of U.S. Atty., Newark, NJ, for U.S.

Before: BECKER, NYGAARD and HIGGINBOTHAM, Circuit Judges

## OPINION OF THE COURT

NYGAARD, Circuit Judge.

This appeal concerns the government's obligation to seal recordings from electronic surveillance and the consequences from failing to seal under Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (Wiretap Act), as amended, 18 U.S.C. § 2510 et seq. After we affirmed the judgments of conviction against Gaetano Vastola and Elias Saka for various racketeering and extortion charges, the Supreme Court vacated our judgment and remanded for further proceedings consistent with *United States v. Ojeda Rios*, 495 U.S. 257, 110 S.Ct. 1845, 109 L.Ed.2d 224 (1990), which construed that section of the Wiretap Act at issue here. On remand, the judgments of conviction were ultimately reinstated and Vastola and Saka appeal once more. We must determine whether under *Ojeda Rios* the district court erred when it refused to suppress evidence adduced from certain electronic surveillance tapes.

The other matter before us is the sufficiency of the evidence that convicted Vastola under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c). Vastola was charged with and convicted of conducting the affairs of an

enterprise through a pattern of racketeering activity, which requires a finding of two or more predicate racketeering acts. Of the four charged predicate acts, which were the basis for separate charges, the jury convicted him of only one. We will examine whether a conviction under substantive RICO may stand notwithstanding an acquittal on separately charged offenses constituting three of the four predicate racketeering acts charged in the indictment. We will dismiss Saka's appeal because we lack appellate jurisdiction. We will vacate Vastola's judgment of conviction and remand for further consideration consistent with this opinion.

## I.

Before we reach the merits of the arguments, we first confront a jurisdictional issue. On August 16, 1991, upon a remand from this court's decision in *United States v. Vastola*, 915 F.2d 865 (3d Cir.1990) *(Vastola II)*, the district court entered the order Saka appeals from. On September 23, 1991, Saka filed a notice of appeal with an accompanying motion to extend the time for filing a notice of appeal under Fed. R.App.P. 4(b). This notice was untimely because Saka failed to file it within 10 days. The district court denied both Saka's motion to extend time and a subsequent motion to reconsider. Saka appealed from the order denying the motion to extend, but sought a voluntary dismissal of that appeal. The appeal was dismissed.

Saka concedes that he has not filed a timely notice of appeal, but contends that we retained jurisdiction when we remanded to the district court. So, he contends that a notice of appeal was unnecessary. This is incorrect. After the district court entered the order appealed from, Saka needed to notify this court and the government that he was appealing. We have no power to waive or extend the time for filing the notice of appeal. See Fed.R.App.P. 26(b). The timely filing of a notice of appeal is both jurisdictional and mandatory. *Browder v. Director, Dept. of Corrections*, 434 U.S. 257, 264, 98 S.Ct. 556, 560, 54 L.Ed.2d 521 (1978). Hence, we lack appellate juris-

diction over Saka's appeal and will dismiss it.

## II.

The facts and procedure in Vastola's appeal are quite complex, but we will recite them only insofar as necessary to decide the appeal. For a complete recitation, see *United States v. Vastola*, 670 F.Supp. 1244 (D.N.J.1987); *United States v. Vastola*, 899 F.2d 211 (3d Cir.1990) *(Vastola I)*.

Vastola was indicted along with 20 others in a 114 count indictment charging them with violating RICO and committing various related offenses including mail and wire fraud and extortion. The broad investigative effort included electronic surveillance authorized under the Wiretap Act. That statute regulates the interception and use of electronic, wire and oral communications. Congress intended the Wiretap Act to ensure that evidence obtained from electronic surveillance will not be altered, edited, or otherwise tampered with. Integral to this goal is the sealing requirement.

The Wiretap Act provides: "Immediately upon the expiration of the period of the order [authorizing wiretap], or *extensions* thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions." 18 U.S.C. § 2518(8)(a) (emphasis added). We have construed "immediately" to mean as soon as administratively practical. To qualify as an "extension" of a prior order, the order must, among other things, authorize surveillance on the same subject, at the same location, and regarding the same matters as the original order. Thus, tapes must be sealed as soon as practical after an order expires unless the surveillance of the same premises is continuing under an extension, or the tapes will be suppressed.

This case arose because the government failed to seal the tapes promptly. On March 15, 1985, the district court authorized the interception of oral and wire communications at the Video Warehouse in West Long Branch, New Jersey, the headquarters of the racketeering enterprise. Surveillance there stopped on May 31, when the business was moved from West

Long Branch to Neptune City, New Jersey; but the extension order did not expire until June 13. The government did not immediately present the tapes for sealing as required by the Wiretap Act. Instead, on June 26, the district court authorized surveillance of the Neptune City premises. This was a new order and did not extend the West Long Branch order. On July 15, while the Neptune City surveillance was continuing, the government sealed 183 tapes from the West Long Branch surveillance. These tapes were not timely sealed; they should have been sealed either immediately after the actual surveillance (May 31), or after the final extension order expired (June 13). *Vastola II*, 915 F.2d at 875 & n. 16. Citing this sealing delay, Vastola made a pretrial motion to suppress the tapes.

The Wiretap Act does not categorically suppress all untimely sealed tapes, providing instead: "The presence of the seal ... or a *satisfactory explanation* for the absence thereof, shall be a prerequisite for the use or disclosure of the contents of any wire, oral or electronic communication or evidence derived therefrom." 18 U.S.C. § 2518(8)(a) (emphasis added). When the motion to suppress was decided, the law of this circuit, under *United States v. Falcone*, 505 F.2d 478 (3d Cir.1974), permitted the government to avoid suppression if it showed that the physical integrity of the tapes had not been compromised.

The government did not explain the sealing delay, but instead relied upon *Falcone* to show that the tapes had not been altered. Also relying on *Falcone*, the district court denied the motion to suppress. The jury convicted Vastola on, among other charges, Counts 1, 3, 4 and 9. (We will discuss these counts in greater detail when we discuss the sufficiency issue.)

With respect to the suppression issue, in *Vastola I* we too relied on *Falcone* and summarily affirmed the district court's decision not to suppress the tapes. 899 F.2d at 239 n. 33. Vastola then successfully petitioned the Supreme Court, *Vastola v. United States*, 497 U.S. 1001, 110 S.Ct. 3233, 111 L.Ed.2d 744 (1990), which grant-

ed certiorari, vacated our decision and remanded for consideration in light of *United States v. Ojeda Rios*, 495 U.S. 257, 110 S.Ct. 1845, 109 L.Ed.2d 224 (1990).

In *Ojeda Rios* there was a delay in sealing tapes under facts similar to those here. On April 27, 1984, the government obtained an order authorizing the interception of communications at Ojeda Rios' residence in Levittown, Puerto Rico. On July 9, surveillance stopped because he moved his residence to El Cortijo, Puerto Rico. An extension order, however, was effective until July 23. On July 27, the government obtained a new order to conduct surveillance at the El Cortijo residence. That order, after several extensions, expired on September 24. After an additional surveillance order covering Ojeda Rios' car expired on October 10, the government sealed the tapes obtained from the surveillance of Ojeda Rios' Levittown and El Cortijo residences.

The government contended that it could satisfactorily explain the sealing delay and demonstrate that the integrity of the tapes had not been compromised. The Court rejected this argument, holding that the government must explain not only why a delay occurred but also why it is excusable. *Id.* at 264, 110 S.Ct. at 1850. In so doing, it expressly overruled the law of this circuit under *Falcone*. *Id.* at 265, 110 S.Ct. at 1850 n. 5.

To explain the delay, the government represented that the attorney supervising the surveillance believed he was not required to seal the tapes until the end of the investigation. It relied on two Second Circuit cases. See *United States v. Principie*, 531 F.2d 1132 (2d Cir.1976); *United States v. Scafidi*, 564 F.2d 633 (2d Cir. 1977). The government thus argued that the delays were excusable because they resulted from a good faith, reasonable misconstruction of the statutory term "extension."

After examining the Second Circuit cases, the Court concluded that "the cases do support the conclusion that the 'extension' theory now pressed upon us was objectively reasonable at the time of the de-

lays." *Ojeda Rios*, 495 U.S. at 266, 110 S.Ct. at 1851. It held that the excuse was reasonable because the government need not prove that its understanding of the law was correct, but that its interpretation was reasonable at the time. *Id.* Nonetheless, the Court stressed that an excuse is not satisfactory unless it was relied on to explain the sealing delay. *Id.* Justices O'Connor and Blackmun concurred separately to emphasize this point; they joined the majority with the understanding that the excuse, albeit reasonable, "must also reflect the actual reason for the delay." *Id.* at 266–69, 110 S.Ct. at 1851–52.

In *Vastola II* we considered this case in light of *Ojeda Rios*. The government advanced several arguments why the tapes should not be suppressed. It first contended that there was no sealing delay at all because the order authorizing surveillance at the Neptune City business extended the original authorization for the West Long Branch surveillance. The practical import of this argument is that the obligation to seal the West Long Branch tapes did not arise until the end of the Neptune City surveillance. We rejected this view as "the statute unambiguously rules out this possibility." 915 F.2d at 874. Thus, the tapes obtained from the West Long Branch premises should have been sealed either after the actual surveillance of those premises or after the expiration of the final extension order. *Id.* at 875 & n. 16.

The government then tried to furnish a satisfactory explanation for the delay by arguing that even if the Neptune City order was not an extension of the West Long Branch order, the supervising attorneys reasonably believed based on a reading of the extant law that the sealing obligation arose at the conclusion of the entire investigation. In the alternative, the government argued that we should remand to the district court for further proceedings to determine the actual reasons for the sealing delay.

We rejected the suggestion that the government satisfactorily explained the delay. The record was insufficient to show that the proffered explanation was the actual reason for the delay. While it was possible that the government offered no explanation for the delay because it had none, it was equally possible that the government assumed that *Falcone* required it to demonstrate only the integrity of the tapes to defeat suppression. We thus concluded that the district court in the first instance should decide whether the government should be permitted to offer an explanation, and if so, to determine whether the explanation is satisfactory. *Id.* at 876. We analogized the first inquiry to that involved in reopening a case. As guidance for the district court we cited *United States v. Blankenship*, 775 F.2d 735, 740–41 (6th Cir.1985). We emphasized that the government must prove the *actual reason* for the sealing delay rather than an *excuse* for some ulterior purpose or administrative bungle.

After first considering the *Blankenship* factors on remand, the district court allowed the government an opportunity to present evidence showing the reasons for the delay. *United States v. Vastola*, 772 F.Supp. 1472, 1477–78 (D.N.J.1991). The court found that the actual reason for the sealing delay was that the government attorneys in charge of the surveillance believed that sealing was not required until after the entire investigation. *Id.* at 1481. It then concluded that the explanation for the sealing delay was objectively reasonable, noting that the *Ojeda Rios* Court found a similar explanation reasonable. *Id.* at 1482–83. It therefore reinstated Vastola's conviction and sentenced him. Vastola appeals again, contending that the district court erred by refusing to suppress the tapes and that the evidence is insufficient to convict him on Count 1.

## III.

We consider as a threshold matter whether the district court on remand abused its discretion by allowing the government to proffer a post-conviction explanation for the sealing delay. See *Vastola II*, 915 F.2d at 876; *United States v. Carson*, 969 F.2d 1480, 1487 (3d Cir.1992). We must then consider whether the explana-

tion proffered is satisfactory under the Wiretap Act. We review the district court's factual findings for clear error. *United States v. McMillen*, 917 F.2d 773, 774 (3d Cir.1990). We exercise plenary review over its legal conclusion that the explanation was objectively reasonable. *Carson*, 969 F.2d at 1487.

### A.

◼ The district court permitted the government on remand to explain the sealing delay. Vastola first contends that the court had no authority to allow the government to proffer a post-conviction explanation. He points to section 2818(8)(a), which provides: "The presence of the seal provided for by this section, or a satisfactory explanation for the absence thereof, shall be a *prerequisite* for the use or disclosure of the contents of any [wiretap evidence]." (Emphasis added.) The statute's plain language, the argument goes, requires the government to proffer a satisfactory explanation before the tapes are admitted into evidence and not after they have been used to obtain a conviction. Whatever merit this argument may have had, our case law clearly holds that the district court has the discretion to allow the government to offer a post-conviction explanation where no explanation had been given before. *Carson*, 969 F.2d at 1493; *Vastola II*, 915 F.2d at 875.

Second, Vastola contends that *Ojeda Rios* precludes the district court from permitting the government to offer a post-conviction explanation for the sealing delay. We acknowledge, as we did in *Vastola II*, that the circumstances here differ from *Ojeda Rios*. The government there offered a reason for the delay *before* the evidence was admitted (though a question remained as to whether the proffered explanation at trial was the same one determined to be reasonable on appeal). The government here offered no explanation, choosing instead to rely on *Falcone*.

We distinguished *Ojeda Rios* on the basis that it arose under Second Circuit law, which required the government to satisfactorily explain the sealing delay at trial.

See *United States v. Gigante*, 538 F.2d 502, 505 (2d Cir.1976). Third Circuit law, however, required only that the government show that the tapes had not been altered. The significance of this is that the district court might "conclude that it would not fairly characterize any reliance the government may have placed on *Falcone* as unreasonable." *Vastola II*, 915 F.2d at 875–76.

Last, Vastola contends that the district court abused its discretion because *Falcone* did not eliminate the need to explain sealing delays. He further contends that since the government chose to rely on *Falcone* at trial, it is judicially estopped from asserting another explanation. Neither argument has merit. We held in *Falcone* that "where the trial court has found that the integrity of the tapes is pure, a delay in sealing the tapes is not, in and of itself, sufficient reason to suppress the evidence obtained therefrom." 505 F.2d at 484. Since we upheld the district court's original decision not to suppress the tapes based on a demonstration of their integrity, *Vastola I*, 899 F.2d at 239 n. 33, the government correctly construed *Falcone* to eliminate the need to explain.

◼ Moreover, the government could have "assumed that it could defeat the suppression motion by demonstrating the integrity of the tapes and thus did not find it necessary to introduce evidence on this point." *Vastola II*, 915 F.2d at 876. The judicial estoppel doctrine seeks to prevent a party from playing fast and loose with courts by asserting contradictory positions; it does not preclude a party from later asserting a position it could have pressed but did not because our case law provided that party with a better argument. Cf. *Scarano v. Central R.R. Co.*, 203 F.2d 510, 513 (3d Cir.1953).

◼ Where the government offers a different reason for a delay than it did at the original suppression hearing, without some reasonable explanation for the shifting position the district court abuses its discretion if it considers the second explanation. *Carson*, 969 F.2d at 1496–97. That is not

the case here, however. The government offered no explanation at the suppression hearing, choosing instead to rely, understandably, on *Falcone.* We directed the district court to consider the issue with respect to the factors enunciated in *Blankenship. Vastola II,* 915 F.2d at 876. The critical inquiry then focuses on the prejudice to the opposing party. See *Blankenship,* 775 F.2d at 741.

Vastola contends that he has been prejudiced because the passage of time and the concomitant fading of memories will not only present the risk of obscuring the true reason for the delay but also give the government an opportunity to temper its explanations according to the dictates of *Ojeda Rios* and *Vastola II.* Be that as it may, any prejudice caused by elapsed time is suffered by the government for it bears the burden of showing the actual reason for the delay. The risk associated with elapsed time is no reason to conclude that the district court abused its discretion. The government, rather than Vastola, must explain to the court's satisfaction that its proffered reason was the actual reason for the delay. *Vastola II,* 915 F.2d at 876.

The district court relied on *United States v. Gallagher,* 751 F.Supp. 481 (D.N.J.1990), which considered this issue under similar circumstances. The court noted that the *Gallagher* court concluded that the proffer of a belated explanation would not prejudice the defendants' case. *Vastola,* 772 F.Supp. at 1477. It opined that to prohibit the government from giving an explanation would be grossly unfair as *Falcone* did not require it. *Id.*

Although we vacated and remanded *Gallagher* in *Carson,* 969 F.2d at 1501, we did so because the district court did not properly analyze the legal sufficiency of the explanation, not because it allowed the government to give a belated explanation. The district court here was within its discretion to rely on *Gallagher* and has sufficiently explained why it permitted the government to proffer an explanation. We hold that the district court did not abuse its discretion by allowing the government to do so.

**B.**

■ We next consider whether the explanation given was satisfactory under the Wiretap Act and *Ojeda Rios.* This inquiry is two-pronged: first, whether the proffered explanation was the actual reason for the delay; second, whether it is objectively reasonable. The Assistant United States Attorney primarily responsible for the surveillance, Diana Armenakis, testified at the evidentiary hearing. The gist of her testimony was that she believed that the Wiretap Act required sealing only after the entire investigation. The district court credited her testimony. *Vastola,* 772 F.Supp. at 1481. Vastola concedes on appeal that the district court's finding as to the actual reason for the delay is not clearly erroneous. So we need not belabor this point.

■ The heart of this matter is whether the government's explanation is objectively reasonable. Vastola contends that the test of an explanation's legal sufficiency should be whether a government attorney exercising a degree of care could have reasonably arrived at the misunderstanding: that is, the "inquiry into the circumstances surrounding a person's *conduct* goes directly to the objective reasonableness of that conduct." Reply Br. 9 (emphasis in original). Vastola contends that the government attorneys failed to exercise this degree of care. The government, however, contends that an attorney's conduct is irrelevant. Rather, the *explanation,* it emphasizes, must be reasonable. So, if a reasonable attorney could have formed the same legal conclusion, it argues that the explanation is reasonable and therefore the delay is excusable.

While this appeal was pending, we decided *United States v. Carson,* 969 F.2d 1480 (3d Cir.1992), which addressed similar issues also in light of *Ojeda Rios.* In *Carson* several orders authorizing surveillance expired before the government obtained orders purporting to extend them. This resulted in some gaps between the expiration date of one order and the entry of a new order. Since the statute requires tapes be

sealed "immediately upon the expiration of the period of the order, or *extensions thereof*," we considered whether an order to extend surveillance needs to be entered before the prior order expires to qualify as an "extension." We held that a new order is an extension if it was "obtained as soon as administratively practical or any delay is satisfactorily explained, *i.e.*, is shown to have occurred without fault or bad faith on the part of the government." *Id.* at 1488. Applying this test, several sets of tapes were untimely sealed. Only two sets are pertinent here, the "205 Zax tapes" and the "33 Zax tapes."

As to the 205 Zax tapes, we concluded that an order dated December 21 was not an extension of one that expired December 3. These tapes should have been sealed as soon as practical after December 3, but were not sealed until December 18. We held that this fourteen day delay was too long to say that the tapes were "immediately" sealed.

The government explained at the evidentiary hearing that the supervising attorney, Robert Stewart, erroneously believed that a time gap of up to thirty days between the expiration of an order and the entry of the new order did not preclude the latter from being an extension. Although Stewart believed a thirty-day gap was permissible, he sealed the 205 Zax tapes on December 18 as a precautionary measure. The district court credited the truth of his explanation and concluded that it was reasonable. *Gallagher*, 751 F.Supp. at 494.

After considering the explanation in light of *Ojeda Rios*, we held that the district court did not err by refusing to suppress these tapes. Stewart read the statute and the extant case law. Since the Wiretap Act limits the life of an order to thirty days, Stewart chose thirty days as the outer limit for a gap. He started the sealing procedure shortly after ten days had expired and secured the extension well within his thirty day benchmark. "He was mistaken, but *Ojeda Rios* makes it clear that pre-*Ojeda Rios* mistakes of law regarding when sealing is required will not be grounds for

suppression." *Carson*, 969 F.2d at 1493. Thus, the tapes were properly admitted.

As to the 33 Zax tapes, we observed that the district court assumed that an order dated March 9 was not an extension of one that expired February 27 (a ten-day delay). *Id.* at 1493. See *Gallagher*, 751 F.Supp. at 494. We remanded to the district court to determine in the first instance the threshold issue of whether the government sealed the tapes as soon as practical, for if it did "their admission will have been proper." 969 F.2d at 1496. In the event that the district court were to find a delay, however, we gave some words of guidance as to the reasonableness of the government's explanation.

The government explained at the evidentiary hearing that Warren Robins, who had assumed the sealing responsibilities from Stewart as to these 33 Zax tapes, had discussed the sealing issue with Stewart. In their conversation, Stewart meant to convey that sealing was required at the end of a particular order or its extension, but Robins understood him to mean that sealing was required only at the conclusion of the entire investigation, rather than at the end of interception at a particular location. "The district court noted that the Supreme Court had accepted a similar rationale in *Ojeda Rios*, subject only to determine on remand that the reason the government advanced in *Ojeda Rios* at the appellate level was not a new justification." *Id.* at 1494. Accordingly, it held that the explanation was reasonable. *Gallagher*, 751 F.Supp. at 495.

We agreed with the district court that a reasonable mistake of law can be a satisfactory explanation for a delay, but opined that its findings failed to support its conclusion. We held: "The government does not, and cannot, argue that an objective reading of the extant case law might have caused an objectively reasonable attorney to take Robins' view" that sealing was required only after the investigation had concluded. 969 F.2d at 1494.

It was suggested at oral argument that this holding is at odds with *Ojeda Rios*. The government there explained that the

attorney supervising the surveillance believed he was not required to seal the tapes until the end of the investigation or a meaningful hiatus. The Supreme Court held that this belief, albeit mistaken, was reasonable and cited *United States v. Principie*, 531 F.2d 1132 (2d Cir.1976). In *Principie*, similar to the case here, electronic surveillance was ordered at different premises, and at least sixteen days after a prior order expired. The Court of Appeals for the Second Circuit held that that order was an extension within the meaning of section 2518 because it "was clearly part of the same investigation of the same individuals conducting the same criminal enterprise." *Id.* at 1142 & n. 14. The Supreme Court held that *Principie* supported the government's conclusion that sealing was not required until after the investigation or a meaningful hiatus. *Ojeda Rios*, 495 U.S. at 266, 110 S.Ct. at 1851.

Although *Ojeda Rios* and *Principie* suggest that the explanations proffered in *Carson* and here are reasonable, we are not free to conduct an unbridled analysis. While Assistant United States Attorney Armenakis studied the statute, outlined it, read its annotations, and spoke with more experienced attorneys, *Vastola*, 772 F.Supp. at 1480, she did form the same mistaken belief held by Attorney Robins in *Carson* (who did none of these things and instead relied on the casual conversation with a superior). She believed that sealing was required only after the investigation, and *Carson* held that this explanation was not objectively reasonable. We are forced to conclude the same. This notwithstanding, *Carson* also held that an unreasonable mistake of law does not automatically lead to suppression.

■ The *Carson* court explained that even though an attorney's mistake of law is unreasonable, the government can still show a satisfactory explanation if "the attorney involved acted as a 'reasonably prudent' attorney would to investigate the legal question involved in a reasonably prudent manner." 969 F.2d at 1494. Under the circumstances in *Carson*, if a prudent lawyer reasonably relied on what Robins perceived to be Stewart's advice without any independent investigation of the law, Robins' explanation as to the delay "would be an objectively reasonable mistake of law that satisfactorily explains the government's failure to meet the statute's requirement of immediate sealing." *Id.* The case then stands for this proposition: When a government attorney's legal conclusion is found to be unreasonable, the explanation for the delay would still be an objectively reasonable "mistake of law" if the government can show that its attorney has adequately researched the law or has otherwise acted reasonably.

■ Since the district court did not determine whether Armenakis conducted herself reasonably under the circumstances, we must remand for further proceedings, which may include a scrutiny for harmless error.[1]

---

1. Judge Nygaard believes that *Carson* was wrongly decided for two reasons. First, the proffered explanation in *Carson* was objectively reasonable. *Ojeda Rios*, 495 U.S. at 266, 110 S.Ct. at 1851; *Principie*, 531 F.2d at 1142. Second, when the *Carson* court remanded to consider Robins' conduct after concluding that his view of the law was unreasonable, it essentially gave the government a second bite at the apple. While an attorney's conduct may be relevant in some circumstances, it is irrelevant under *Ojeda Rios* when the delay is attributable to a mistaken belief about the extant law.

When there has been a misunderstanding of the law, *Ojeda Rios* makes clear that the government's "*interpretation* [of the law] was objectively reasonable at the time." 495 U.S. at 259, 110 S.Ct. at 1845 (emphasis added). In other words, the *explanation* must be satisfactory under the Wiretap Act. After we are satisfied that the actual reason for the delay was the mistaken view of the law, nothing in the Wiretap Act or *Ojeda Rios* requires that we inquire into the attorney's conduct. It matters not whether the mistaken belief was formed after conducting an independent, exhaustive research on the law of wiretapping or after being told by another attorney in a casual conversation.

This does not mean that there are no situations where we should inquire into the government's conduct. When there are delays in sealing, they can be attributed to three general reasons: first, the government acted in bad faith or sought a tactical advantage; second, it misconstrued the law; third, administrative necessity, mistake, obstacle or other unexpected circumstances arose. The first explanation is, of course, inexcusable. "A satisfactory explana-

## IV.

Vastola was ultimately convicted on four counts of a redacted superseding indictment: Count 1, conducting the affairs of an enterprise through a pattern of racketeering activity violating the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c); Count 3, conspiracy to conduct a RICO enterprise in violation of 18 U.S.C. § 1962(d); Count 4, conspiracy to collect an extension of credit by extortionate means in violation of 18 U.S.C. § 894; and Count 9, conspiracy to affect commerce by extortion in violation of the Hobbs Act, 18 U.S.C. § 1951.

A conviction under Count 1 requires, among other things, finding a "pattern of racketeering activity," which RICO defines as "at least two acts of racketeering activity." 18 U.S.C. § 1961(5). See *Vastola I*, 899 F.2d at 222 & n. 13. The indictment listed these four racketeering acts (each of which comprised of one or more of the offenses charged in the non-RICO counts):

1. Predicate Act One (the "MCA extortion conspiracy") constitutes Counts 4, 5, 9, 10—use and conspiracy to use extortionate means to collect extension of credit;

2. Predicate Act Two constitutes Counts 6 and 7—conspiracy to make extortionate loans and to use extortionate means to collect loans;

3. Predicate Act Three constitutes Count 11—making an extortionate loan to Daniel Zack;

4. Predicate Act Four constitutes Counts 24 and 26—fraudulent concealment and transfer of property of Dispodype, Inc., in violation of bankruptcy laws.

As noted, Vastola was convicted on Counts 4 and 9 of the MCA extortion conspiracy, the first racketeering act. Of the counts supporting the three remaining racketeering acts, the jury was either deadlocked or acquitted Vastola of all offenses underlying the remaining three racketeering acts (deadlock on Counts 6 and 11 and acquittal on Counts 7, 24 and 26). Further, no special verdict regarding the racketeering acts was obtained for Count 1. Thus, the jury's verdict did not facially support a second racketeering act.

▆▆▆ When a jury delivers an inconsistent verdict in a compound offense, there are two independent questions: whether the inconsistent verdict mandates an acquittal; and whether the evidence is suffi-

---

tion is usually based on a mistaken view of the law on what triggers sealing, but on occasion it can be supplied by an extraneous unforeseen emergent situation." *Carson*, 969 F.2d at 1487 (citations omitted). The second explanation, a mistake of law, is what *Ojeda Rios* addressed. The inquiry in such cases should be governed by *Ojeda Rios*.

Where there has been a delay due to administrative necessity, mistake, obstacle or other unexpected circumstances, the inquiry focuses on the surrounding circumstances as they determine whether the explanation was reasonable and therefore excusable. See *United States v. Mora*, 821 F.2d 860 (1st Cir.1987). This would entail a scrutiny of the attorney's conduct. So, for example, the government has a satisfactory explanation if the delay was attributable to a lack or diversion of resources, the caseload, or an attorney's health problems. See *United States v. Massino*, 784 F.2d 153 (2d Cir.1986); *United States v. McGrath*, 622 F.2d 36 (2d Cir. 1980).

The district court has already determined that the government's explanation was the actual reason for the delay. It found that Armenakis consulted the statute, its annotations and her colleagues and that based upon this research

she concluded that the Wiretap Act required sealing only after the entire investigation. If we are satisfied that she actually believed this, we should not consider how much she looked at the law, but should consider instead whether a reasonable attorney could have construed the law as she did. We should have stopped here in *Carson* (in which case *Carson* would still have been wrongly decided since under *Ojeda Rios* and *Principie* the mistake of law was reasonable). Instead, however, the *Carson* court proceeded further to inquire into the attorney's conduct.

We dealt with a special situation in *Carson*, one not likely to arise frequently. The circumstances here fit squarely into what the *Carson* court identified as "usually" arising under; Armenakis made a mistake of law. In this case, the inquiry should be simply whether Armenakis' "interpretation [of the law] was objectively reasonable at the time." *Ojeda Rios*, 495 U.S. at 259, 110 S.Ct. at 1845 (emphasis added). Since the *Carson* court says that her explanation is unreasonable, and since I reluctantly agree that the court requires a two-step inquiry first into the reasonableness of the explanation and then into the conduct, we must remand for findings as to the latter.

cient to support a conviction for the compound offense.

Vastola moved the district court to set aside the jury's guilty verdict on Count 1 because the jury's verdict was inconsistent and showed that the jury could not possibly have found that he committed the requisite two or more racketeering acts. The court agreed and entered a judgment of acquittal. The government appealed this decision.

In *Vastola I* we affirmed Vastola's convictions for the most part, but reversed the order setting aside the verdict on Count 1. We acknowledged that there was no question that the verdict was inconsistent. Where, however, the problem is one of inconsistent verdicts, we noted that *United States v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), governs. That case held that jury verdicts cannot be set aside solely on the ground of inconsistency. As the *Powell* Court explained, "Whether presented as an insufficient evidence argument, or as an argument that the acquittal on the predicate offense should collaterally estop the Government on the compound offense, the argument necessarily assumes that the acquittal on the predicate offense was proper—the one that the jury 'really meant.'" 469 U.S. at 67, 105 S.Ct. at 478. As in *Powell,* we noted that the jury's verdict could mean that the jury believed that Vastola did not commit the RICO offense, or it could mean that the jury really did find a RICO violation yet acquitted him of the predicate offenses out of lenity or some other improper motivation. 899 F.2d at 225.

We held that the jury's verdict of guilty on Count 1 presupposes that it found the requisite two racketeering acts regardless of whether that presupposition is inconsistent with its verdict on other counts. *Id.* at 222–25. We remanded for entry of judgment of conviction on Count 1 and for resentencing, noting that Vastola is free to appeal from the reinstatement of judgment and sentence, except for issues already decided against him. *Id.* at 225. Since the sole basis for the district court's judgment of acquittal was the inconsistent verdicts,

we expressed no opinion as to whether the evidence of Vastola's participation in the racketeering acts was sufficient. Vastola now appeals his conviction on Count 1 on that ground.

Vastola contends that, aside from the MCA extortion conspiracy constituting one predicate act, we cannot determine which other racketeering act the jury relied on to reach its verdict. And since we cannot determine this, he further contends that we must find sufficient evidence to prove all three of the other acts.

In *United States v. Brown,* 583 F.2d 659 (3d Cir.1978), a jury convicted the defendant of four substantive offenses and a RICO conspiracy offense whose racketeering acts constituted the four substantive offenses. We then overturned two of convictions for the substantive offenses. Since we had no way of knowing which of the two racketeering acts the jury relied on to convict the defendant on the conspiracy charge, we overturned that charge as well, regardless of the possibility that the jury could have reached its verdict based on a guilty finding on two of the valid predicate offenses. *Id.* at 670. We specifically relied on these two cases to support our conclusion: *United States v. Dansker,* 537 F.2d 40, 51–52 (3d Cir.1976); *United States v. Tarnopol,* 561 F.2d 466, 474–75 (3d Cir. 1977).

In *United States v. Riccobene,* 709 F.2d 214 (3d Cir.1983), we construed *Brown* as standing for the proposition that "if a defendant is charged with multiple predicate offenses, the evidence must be sufficient to prove all of them if the court cannot determine which specific offenses the jury relied upon in reaching its verdict." *Id.* at 227. We, however, did not construe *Brown* to require a reversal of a defendant's conviction when there is sufficient evidence from which the jury could have concluded that he did commit every predicate offense charged against him. *Id.* at 228. Nor did we construe it to require a reversal when we can determine that the jury did not rely on the challenged predicate offense in reaching its verdict on the RICO charge. *Id.*

Because the *Riccobene* jury returned an acquittal on one of the offenses constituting a predicate offense, that verdict was a functional equivalent of a special interrogatory. The *Riccobene* court reasoned that in *Brown* the guilty verdicts on all the substantive charges indicated that the jury might have relied on those charges as predicate offenses when considering the RICO claim, whereas in *Riccobene* there was no reason to believe that the jury returned inconsistent verdicts by relying on the charge underlying the acquittal as a basis for the RICO verdict. *Id.* at 229–30. It thus upheld the conspiracy conviction.

Since *Brown* and *Riccobene*, the Supreme Court decided *Griffin v. United States*, — U.S. —, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991). The defendant there was charged with conspiracy to defraud the Internal Revenue Service and the Drug Enforcement Administration. The government conceded that there was insufficient evidence to defraud the DEA. The trial court instructed the jury in a manner that would allow the jury to return a guilty verdict if it found the defendant guilty of either one of two fraudulent objects. The jury returned a general verdict of guilty on the conspiracy charge. The issue was whether a general guilty verdict on a multiple-object conspiracy charge must be set aside if the evidence is inadequate to support the conviction as to one of the objects.

Citing *Turner v. United States*, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), the Court opined that when a jury returns a general guilty verdict on an indictment charging several acts in the conjunctive, the verdict stands if the evidence is sufficient with respect to any one of the acts charged—even though there is no assurance that a valid ground, rather than an invalid one, was actually the basis for the jury's action. *Id.* at —, 112 S.Ct. at 469, 473. The Court then distinguished between cases where a basis of conviction was either unconstitutional or otherwise illegal and where a basis of conviction was merely unsupported by sufficient evidence. *Id.* at —, 112 S.Ct. at 470–73. It observed that Griffin "cite[d] no case, and we are aware of none, in which we have set aside a general verdict because one of the possible bases of conviction was neither unconstitutional as in [*Stromberg v. California*, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931)], nor even illegal as in [*Yates v. United States*, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957)], but merely unsupported by sufficient evidence." *Id.* — U.S. at —, 112 S.Ct. at 472.

Griffin tried to distinguish *Turner* by asserting that the Court had not yet applied *Turner*'s general rule to multiple-act conspiracies. The Court rejected this distinction and agreed with the majority of federal courts that have made no exception to the *Turner* rule for multiple-object and multiple-overt act conspiracies. It noted that only the Third Circuit had adhered to a contrary rule. *Id.* at —, 112 S.Ct. at 473 n. 2, citing *United States v. Tarnopol*, 561 F.2d 466, 474–75 (3d Cir.1977).

In *Tarnopol* a jury returned a general verdict of guilty on a conspiracy charge based upon three objectives. We found on appeal that there was insufficient evidence to support one of these objectives. 561 F.2d at 475. "In this situation, the verdict of guilty ... cannot stand if the indictment was insufficient in law in that any one of the three objectives of the conspiracy did not constitute a crime or if the evidence was insufficient to sustain a finding by the jury that any one of these activities had been engaged in." *Id.* at 474, citing *Dansker*, 537 F.2d at 51. To the extent that *Brown* and *Riccobene* relied on *Tarnopol* and *Dansker*, it is clear that the Supreme Court has expressly overruled those cases. *Griffin*, — U.S. at —, 112 S.Ct. at 473 n. 2.

The only distinction between *Griffin* and this case is the substantive crimes. Whereas Griffin was charged with conspiracy in which the jury could properly convict upon a finding of one of the two objects charged, Vastola was charged with substantive RICO on Count 1 in which the jury could properly convict upon a finding of two of the four predicate acts charged. This distinction, however, is irrelevant. The rationale of *Griffin* directly applies to this case.

Nonetheless, there remains an issue of whether *Griffin* and *Powell* can be applied together. The decisions in *Powell* and *Vastola I* preceded *Griffin*. Vastola argues that the application of both *Powell* and *Griffin* would exponentially expand their underlying presumptions to a level uncontemplated and would force us to speculate on the jury's deliberation. To the contrary, we conclude that what Vastola wants would require that we speculate about the jury's deliberation, whether the jury did or did not find the requisite predicate acts, and that we should not do. See *Powell*, 469 U.S. at 65, 105 S.Ct. at 477.

 Where there has been an inconsistent verdict, the criminal defendant is protected against jury irrationality and error by a review of the sufficiency of the evidence. *Id.* at 67, 105 S.Ct. at 478. "Sufficiency-of-the-evidence review involves assessment by the courts of whether the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt. This review should be *independent* of the jury's determination that evidence on another count was insufficient." *Id.* (emphasis added and citations omitted).

 An inconsistent verdict could have netted a windfall for the government or for the defendant. Assume for the moment that the jury believed Vastola committed three of the predicate acts but acquitted him on two of the predicate acts out of lenity or mistake. In such a case, there is no good reason why Vastola is entitled to an acquittal on the RICO count as well because the government failed to prove *all* the predicate acts or because the jury improperly acquitted him on two of the predicate acts. In short, we will not reverse a conviction based on speculations about the jury's rational deliberation process. We will instead inquire whether the jury's guilty verdict on Count 1 can be upheld because there is sufficient evidence to support two predicate acts.

 The evidence supports Vastola's convictions under Counts 4 and 9 relating to the MCA extortion conspiracy. *Vastola I*, 899 F.2d at 230. He cannot argue the legal sufficiency of these convictions; there is sufficient evidence that Vastola committed one of the four alleged racketeering acts. *Id.* at 225. Our task is to determine whether there is sufficient evidence supporting another racketeering act.

The second predicate act listed in the indictment was a conspiracy to make extortionate loans as charged in Count 6, and a conspiracy to use extortion to collect loans as charged in Count 7. We believe *Vastola I* makes it clear that there is sufficient evidence to convict on Count 7. Although we reversed Vastola's conviction for insufficient evidence on Count 2 (substantive RICO based on an unlawful debt collection from Joseph Dwek), we noted that "the evidence was overwhelming that Vastola supervised the collection of unlawful debts by his subordinates within the enterprise." *Id.* at 227. Furthermore, in affirming Vastola's conviction under Count 3 (conspiracy to conduct a RICO enterprise), we commented on the evidence linking Vastola to an unlawful extortionate loan to Dwek. We opined that Vastola's own statements tied the Dwek loan to the RICO enterprise. "There is little question that Vastola knew the [Dwek] loan was unlawful and with that knowledge, encouraged Saka and Brocco to collect it." *Id.* at 229.

 We conclude that viewing the evidence in light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), there is sufficient evidence to support a conviction under Count 7. As there is sufficient evidence that Vastola committed the two requisite racketeering acts, Vastola's conviction under Count 1 must stand unless the district court rules in favor of Vastola on the wiretap issue.

## V.

In sum, we hold (1) that we do not have jurisdiction over Saka's appeal, (2) that the district court erred by refusing to suppress tapes without properly inquiring into whether the government has proffered a satisfactory explanation under the Wiretap Act, and (3) that the evidence was suffi-

cient to convict Vastola of conducting a RICO enterprise in violation of 18 U.S.C. § 1962(c). We will dismiss Saka's appeal. We will vacate Vastola's judgment of conviction and remand with instructions to consider the reasonableness of Armenakis' inquiry into the law as to the sealing of the 183 tapes obtained from the surveillance of the West Long Branch premises and to consider whether the error, if any, was harmless.

### SUR PETITION FOR PANEL REHEARING

May 12, 1993.

Present: BECKER and NYGAARD, Circuit Judges.

The petition for rehearing filed by Appellee having been submitted to the judges who participated in the decision of this court and no judge who concurred in the decision having asked for rehearing, the petition for panel rehearing is DENIED.