7 F.3d 236
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff/Appellee,
v.
Ray HURD, Defendant/Appellant.
 No. 92-5988.
 United States Court of Appeals, Sixth Circuit.
 Oct. 1, 1993.
 
 Before: KEITH and JONES, Circuit Judges; and PECK, Senior Circuit Judge.*
 PER CURIAM.
 
 
 1
 Ray Hurd appeals his conviction of possession of firearms by a convicted felon in violation of 18 U.S.C. § 922(g) (1988). He claims that insufficient evidence was introduced at trial to support the jury's verdict, that the district court improperly allowed the government to reopen its case in order to introduce evidence of drugs found at Hurd's home, and that the district court erred in refusing to instruct the jury on the defense of temporary innocent possession. We affirm on all three issues.
 
 
 2
 * On September 26, 1991, officers of the Shelby County Police Department executed a search warrant at Hurd's home in Memphis, Tennessee. Detective Mark S. Dunbar testified at trial that, upon entering the home through the front door, he saw Hurd standing near a table in the dining room, located to the left of the front door. He further testified that another individual, Jeffrey Cole, was standing next to the window of the dining room, three to four feet from the table. On the table, within Hurd's reach, Dunbar found a loaded, one-shot .22-caliber Derringer, twenty-eight grams of marijuana, a glass test tube with cocaine residue, a razor blade, and several "snow seals," which are pieces of fine paper commonly used for packaging cocaine.
 
 
 3
 Officers found additional drugs in various locations in the apartment. They found two grams of powdered cocaine in the carpet next to the table, along with a plate bearing cocaine residue. Dunbar testified that he had heard the plate thrown against the wall as he entered the home. On the television in the living room, officers found another .7 grams of cocaine powder in a "snow seal."
 
 
 4
 While searching the bedroom that Hurd shared with his girlfriend, detectives Jackie R. Setliff and Dunbar found an additional weapon, a loaded .38-caliber revolver, between the mattresses of the bed. At trial, defense witness Jeffrey Cole disputed the officers' account of the search. Cole testified that he, not Hurd, was standing by the table when the officers arrived, and that Hurd was sitting on the couch, talking on the phone. Cole further testified that he owned the .22 Derringer and had taken it out of his clothing and placed it on the table when the officers arrived. Cole further testified that Hurd was unaware that he had a gun.
 
 
 5
 Joyce Miller, Hurd's girlfriend, testified at trial that she, not Hurd, owned the .38-caliber pistol found in the bedroom, and that Hurd was unaware of the firearm in the apartment. Further, Miller testified that she slept on the left side of the bed where the gun was found.
 
 
 6
 The parties stipulated at trial that Hurd had previously been convicted of two state felony crimes, larceny from the person and fraudulent use of a credit card.
 
 II
 
 7
 In order to convict Hurd on the § 922(g) charge, the government had to prove that he knowingly possessed a firearm, that he previously had been convicted of a felony offense, and that the firearm affected interstate commerce. Hurd conceded the second and third elements at trial, and has not challenged them on appeal. J.A. at 245. He does challenge the first element, arguing that there was insufficient evidence to support the jury's verdict that he knowingly possessed either the .22- or .38-caliber guns.
 
 
 8
 Our standard for reviewing claims challenging the sufficiency of evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Ellzey, 874 F.2d 324, 328 (6th Cir.1989) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).
 
 
 9
 It is undisputed in this case that Hurd did not physically possess a firearm. Rather, the government's theory is one of constructive possession. To establish constructive possession, the government must show that a defendant "knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." United States v. Craven, 478 F.2d 1329, 1333 (6th Cir.1973), cert. denied, 414 U.S. 866 (1973). Mere presence on the scene with illegal possessors is insufficient to show possession. United States v. Birmley, 529 F.2d 103, 107-08 (6th Cir.1976).
 
 
 10
 The government relies on several factors to argue that Hurd had dominion and control over the weapons, most importantly the weapons' locations. Both guns were found inside Hurd's home, over which he exercised dominion and control. Citing the testimony of detectives Dunbar and Setliff, which conflicts with that of the defense witnesses, the government further points out that the .22 Derringer was easily within Hurd's reach at the table where only he had been standing.
 
 
 11
 The defense seeks to portray Hurd as a mere bystander at the scene. Based on the testimony of Coles, the defense places Hurd on the couch, not at the table, and thus away from the .22 Derringer. The defense further cites Hurd's lack of knowledge about weapons and the testimony of Coles and Miller that they owned the guns.
 
 
 12
 In reaching its verdict, the jury was required to judge the credibility of the witnesses for each side and to resolve the factual conflicts in the testimony given by them. Witness credibility, in fact, was the essence of the defense's closing argument to the jury: "if you believe the testimony of Mr. Cole, then you also would find Mr. Hurd not guilty.... The police officers, you judge their credibility just as you are going to judge the credibility of Mr. Cole and Mrs. Miller." J.A. at 247, 248-49. Instead of making the credibility determination that the defense wanted, the jurors delivered a verdict of guilty. They apparently found Coles and Miller less credible, perhaps because neither came forward to claim ownership of the weapons until the day of the trial.
 
 
 13
 We cannot say that the jury's decision to believe the prosecution's witnesses could not have been rationally made. Thus, we deny Hurd's challenge to the sufficiency of the evidence.
 
 III
 
 14
 Hurd next argues that the trial judge abused his discretion in allowing the government to reopen its case-in-chief in order to introduce evidence of drugs found at the scene. The decision to allow a party to reopen its case lies within the sound discretion of the district court; we review such decisions under an abuse of discretion standard. United States v. Blankenship, 775 F.2d 735, 740-41 (6th Cir.1985). Where the trial judge permits the government to reopen its case-in-chief after it has rested, but before the defendant has presented any evidence, "it is unlikely that prejudice sufficient to establish an abuse of discretion can be established." Id.
 
 
 15
 Blankenship set forth several considerations for district courts to use when deciding whether to reopen the proof. These include the timeliness of the motion, the character of the testimony, and the effect of granting the motion. Id. at 741. Furthermore, the party moving to reopen should have a reasonable explanation for not presenting the evidence in its case-in-chief and the evidence must be admissible. Id.
 
 
 16
 Following Blankenship, there was no prejudice to the defendant sufficient to establish an abuse of discretion by the trial judge when he allowed the government to reopen its case. The judge allowed the reopening after the government rested its case-in-chief, but before the defendant presented any evidence. The timeliness of the motion is not at issue, as there was no element of surprise to the defendant regarding the nature or character of the evidence presented by the government when it reopened the case. Id. at 741.
 
 
 17
 It is apparent that the government did not offer the drug evidence until it reopened its case-in-chief because the district court had initially granted a motion in limine to keep it out. Prior to the prosecution's case, Hurd's counsel made the motion in limine, or request for guidance on an evidentiary question, for exclusion of any evidence of drug use by Hurd under Rule 404(b). The trial judge granted the motion, advising that the evidence would be excluded on the condition that the intent element of the weapons possession charge would not become an issue in the defense's case. Defense counsel assured the judge that Hurd's defense would not be whether he possessed the guns knowingly, but that Coles and Miller possessed the weapons instead of him.
 
 
 18
 After the government put on its case-in-chief, the defense made a motion for acquittal. During the argument on that motion, defense counsel stated: "there has been no proof that he had any intent to exercise control over either one of the guns at all." J.A. at 144 (emphasis added). The trial judge then reminded defense counsel that the earlier ruling on the motion in limine was based upon intent not becoming an issue in the case. Id. Upon the government's motion and after further argument, the trial judge reversed his previous ruling on the motion in limine, stating that he had misjudged how the issues would develop in the case and thus "jumped the gun a little bit" in ruling on the motion. J.A. at 150.
 
 
 19
 Under Sixth Circuit precedent, a ruling on a motion in limine is no more than a preliminary, or advisory, opinion which falls entirely within the discretion of the district court. The trial court is permitted to change its ruling during the trial. United States v. Luce, 713 F.2d 1236, 1239 (6th Cir.1983) ("A ruling on a motion in limine is therefore essentially an advisory opinion by the trial court."), aff'd, 469 U.S. 38 (1984).
 
 
 20
 In the instant case, Hurd's motion in limine was made before the government put on any of its proof. At this point, the trial judge did not know whether Hurd would raise the intent issue as his defense, though he had assurances that Hurd would not. When, during the course of trial, it became apparent to the judge that intent would, or should, be an issue, and that he had not fully anticipated this development, the judge reversed his ruling. Under the Luce standard, there is no error or abuse of discretion in such a reversal. Accordingly, Hurd's claim that the trial court abused his discretion in allowing the prosection's case reopened has no merit.
 
 IV
 
 21
 Hurd further maintains that the trial judge improperly admitted drugs and drug paraphernalia into evidence. Our standard of review in determining whether the district court properly balanced the probative value of the evidence against its prejudicial effect under Rule 404(b) is "whether the trial judge abused his discretion in admitting the evidence." United States v. Vincent, 681 F.2d 462, 465 (6th Cir.1982).
 
 
 22
 Fed.R.Evid. 404(b) provides, in relevant part:
 
 
 23
 (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....
 
 
 24
 We have set forth a two-step analysis to determine on appeal whether evidence challenged under Rule 404(b) was properly admitted:
 
 
 25
 First, we must decide whether ... [the evidence] was admissible for any proper purpose, as distinct from the improper purpose of showing "character" or "propensity." If we conclude that there was a proper basis for admission, we must then consider whether the probative value of the evidence outweighed its potential prejudicial effects.
 
 
 26
 Vincent, 681 F.2d at 465 (citation and emphasis omitted).
 
 
 27
 Regarding Vincent's first prong, the government argues that it offered evidence of drugs solely to show Hurd's motive, intent, and knowledge with respect to why he possessed the firearms, not to show bad character. The record indeed shows that the prosecutor referred only to the issue of intent at trial when arguing in support of admitting the evidence. Likewise, the judge specifically stated that he allowed the evidence only for the purpose of showing Hurd's intent to possess the weapon.
 
 
 28
 The government relies on United States v. Hatfield, 815 F.2d 1068 (6th Cir.1987), which applied Vincent's 404(b) analysis. The defendant in Hatfield was charged with being a felon in possession of a firearm under the predecessor to the statute at issue here. At trial, the government wished to introduce burglarly tools, seized during a search of the defendant's van at the time a gun was also found, in order to show intent to possess the gun. The Hatfield court reasoned that the "burglary paraphrenalia" would not be properly admitted to show Hatfield's knowledge unless he had put his mental state in issue or the mens rea necessary for the possession charge was not inferable from proof of possession itself. 815 F.2d at 1072. The defendant in Hatfield placed the mental element in issue because he denied knowledge of the gun in his van. The court therefore concluded that the tools were entered into evidence for a proper purpose under Rule 404(b). Id.
 
 
 29
 As in Hatfield, defense counsel here placed Hurd's mental state in issue. The defense argued that Hurd had no knowledge of either gun. Counsel also made reference to Hurd's intent in making the motion for acquittal. It should also be noted that the .22 Derringer and the drugs on the table were found in closer proximity than the gun and tools in Hatfield, which were found separately in the van. Under Hatfield, the evidence of the drugs in this case was admissible for a proper purpose, and the first prong of the Vincent test is met.
 
 
 30
 The second requirement under Vincent is to balance the probative value of the evidence against its potential prejudicial effect. "The real question is whether the evidence [is] unfairly prejudicial and whether such unfair prejudice substantially outweigh[s] the probative value of the evidence." United States v. Passarella, 788 F.2d 377, 384 (6th Cir.1986). The district court is afforded broad discretion in its determination. United States v. Ismail, 756 F.2d 1253, 1259 (6th Cir.1985).
 
 
 31
 The trial judge in this case explicitly applied the Vincent balancing test and found that the probative value of the Rule 404(b) evidence substantially outweighed its prejudicial effect. J.A. at 152-53. A judge also usually can minimize the prejudicial impact of Rule 404(b) evidence by a properly worded cautionary or limiting instruction. United States v. Huddleston, 811 F.2d 974, 976 (6th Cir.1987), aff'd, 485 U.S. 681 (1988). In this case, the trial judge gave such a cautionary instruction as part of the jury charge, even though the defendant made no request for him to do so.
 
 
 32
 In United States v. Vance, 871 F.2d 572 (6th Cir.), cert. denied, 493 U.S. 933 (1989), the court noted that "[a]n important indication of probative value of evidence is the prosecution's need for the evidence in proving its case." Id. at 576. Here, the government argues that it was crucial that the prosecutor be able to introduce the drug evidence in order to prove the defendant knowingly possessed the firearms. Given the record here, we find that the trial judge did not abuse his discretion in allowing the government to introduce the drug evidence to demonstrate appellant's intent to knowingly possess the guns.
 
 IV
 
 33
 Appellant's final claim is that the district court erred in refusing to instruct the jury as to the defense of temporary innocent possession. "When a proper request for an instruction on a criminal defendant's theory of defense is made, it is reversible error not to present that theory adequately in a full statement of the law." United States v. Duncan, 850 F.2d 1104, 1117-18 (6th Cir.1988), cert. denied sub. nom. Downing v. United States, 493 U.S. 1025 (1990).
 
 
 34
 The temporary innocent possession defense does exist in rare situations. See United States v. Wolak, 923 F.2d 1193, 1198 (6th Cir.1991). However, in this case the whole defense proceeded on the theory that the defendant did not even have constructive possession of the firearms, including presenting witnesses who testified to ownership of them. The requested instruction is completely incongruous with the defense theory, and Hurd directs us to no portion of the record that would indicate the instruction necessary. The court thus did not commit reversible error in refusing to give the instruction here. See id.
 
 V
 
 35
 For the forgoing reasons, we AFFIRM the district court in all respects.
 
 
 
 *
 Hon. John W. Peck, senior circuit judge, deceased September 7, 1993. Judge Peck participated in the oral argument but not the decision in this case