**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 17a0241n.06

Case No. 16-6162

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Apr 27, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| KEVIN LABONA, | ) | KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: GIBBONS, COOK, and GRIFFIN, Circuit Judges.

COOK, Circuit Judge. Defendant Kevin Labona appeals his conviction and sentence for possessing and distributing child pornography. We AFFIRM.

**I.**

*Background Facts.* In December 2012, Labona walked into the FBI's Lexington, Kentucky, office to report that someone had emailed child pornography to his cellular phone. During his meeting with Special Agent Kimberly Kidd, Labona showed her the images and offered to join a sting operation to capture the perpetrators. Agent Kidd declined Labona's proposal and instead informed him that she needed to confiscate the phone. He acquiesced, signing a consent form that permitted the FBI to search and analyze the phone's stored data.

Once Labona left the office, Agent Kidd performed a forensic examination of the phone's memory disk and discovered "approximately 50 images of child pornography." After discussing

the photos with an Assistant United States Attorney ("AUSA"), Agent Kidd and the AUSA agreed not to prosecute Labona because "he was homeless, and . . . voluntarily brought this information in to [the government]." At no point did they relay their decision to Labona.

They reversed course on their non-prosecution decision when an undercover FBI agent (who was posing as a child pornographer in a sting operation) tipped them off to Labona's suspicious activities. Over a two-week period in October 2013, Labona emailed explicit photos of young girls to the agent, solicited him to respond in kind, and provided advice on "grooming," a technique whereby a child molester manipulates a minor into a sexual relationship. After tracing Labona's location to Lexington, the agent handed over the evidence to Agent Kidd.

Agent Kidd and the AUSA promptly opened an investigation into Labona's activities, and by October 2014, they had obtained a grand-jury indictment and an arrest warrant. They then learned from Labona's ex-wife that he often stayed with "Jane Doe," a longtime friend, in Logan County, Ohio. With the local sheriff's help, they tracked Labona down and arrested him as he was walking with a seven-year-old girl outside the Doe family's trailer.

*Procedural Facts.* The government charged Labona with one count of possessing child pornography, in violation of 18 U.S.C. § 2252(a)(4)(b), for the images Agent Kidd found on his phone, and two counts of "distribut[ing] visual depictions . . . of a minor engaging in sexually explicit conduct," in violation of 18 U.S.C. § 2252(a)(2), for the emails he sent to the undercover agent. Labona waived his right to a jury trial.

The district court found Labona guilty on all three counts in the ensuing bench trial. It sentenced him to 240 months' imprisonment for possession of child pornography and 480 months' imprisonment for each count of distribution of child pornography, all to be served concurrently. Labona timely appealed his conviction and sentence.

**II.**

Labona contends that the district court should have dismissed the charge of possessing child pornography because "the FBI . . . promise[d] not to prosecute [him]" for the images found on his phone. But since the FBI in fact made no such promise, Labona's informal-immunity claim fails.

"An agreement not to prosecute is contractual in nature, and subject to contract law standards." *United States v. Fitch*, 964 F.2d 571, 574 (6th Cir. 1992) (citing *United States v. Brown*, 801 F.2d 352, 354 (8th Cir. 1986)). Labona must therefore prove that in exchange for giving up his phone, the government made a written or oral promise not to prosecute him. *See Rowe v. Griffin*, 676 F.2d 524, 527–28 (11th Cir. 1982) (requiring that the government honor a promise of immunity when "(1) *an agreement was made*; (2) the defendant has performed on his side; and (3) the subsequent prosecution is directly related to offenses in which the defendant, pursuant to the agreement, either assisted with the investigation or testified for the government" (emphasis added)); *see also United States v. Turner*, 936 F.2d 221, 223 (6th Cir. 1991) ("[I]nformal immunity arises by way of assurances [from] prosecutors, either orally or by letter, to a potential grand jury witness that he will be immune from any prosecution based on [his] testimony.").

Labona argues for the first time on appeal that the government violated the terms of an informal-immunity agreement. We therefore review his claim for plain error. *Cf. United States v. Barnes*, 278 F.3d 644, 646 (6th Cir. 2002) (applying plain-error analysis to a plea-agreement challenge first raised on appeal). To succeed on plain-error review, Labona must show a plain or obvious error that affects his substantial rights and seriously affects the fairness, integrity, or public reputation of his judicial proceedings. *Id.* (citation omitted).

In his appellate brief, Labona cites testimony that Agent Kidd and the AUSA decided—outside of Labona's presence—that they "would not prosecute him for [the pornography on his phone]." He then asserts, without any factual support, that the government "conveyed" this decision to him in exchange for his relinquishing the phone.

The timeline of events refutes Labona's assertion of an immunity agreement. Agent Kidd and the AUSA decided not to prosecute Labona *after* he had already turned over the phone and left the office. Agent Kidd therefore could not have offered the "immunity" that Labona claims, which did not exist at the time she confiscated his phone. Moreover, Agent Kidd testified that Labona agreed to give up his phone because she "told [him], that since [she] knew his phone contained child pornography, [she] would not be able to let him leave with it." In short, the record reveals no government action suggesting a promise not to prosecute Labona.

Perhaps realizing the futility of his argument, Labona changes tack, insisting that under *United States v. Streebing*, 987 F.2d 368 (6th Cir. 1993), he need not prove that "the [non-prosecution] decision . . . be given or conveyed to the defendant." Labona misreads *Streebing*. In that case, the record was unclear about whether the government had promised the defendant immunity. *Id.* at 371. This court therefore assumed, only for the sake of argument, that the government had made a promise so we could analyze whether to hold it to its bargain. *Id.* at 371–73. *Streebing* therefore offers no support for Labona's position.[1]

Because he cannot establish that the government communicated any commitment or assurance not to prosecute him, we find no error, plain or otherwise.

---

[1] Labona also relies on two out-of-circuit cases, but the facts in each show that the government had conveyed a promise to the defendant. *United States v. Kettering*, 861 F.2d 675, 676–77 (11th Cir. 1988); *Johnson v. Lumpkin*, 769 F.2d 630, 633 (9th Cir. 1985).

## III.

Labona also challenges the district court's admission of Minor A's testimony about Labona's prior acts of molestation, arguing that the testimony's unfair prejudice outweighed its probative value. *See* Fed. R. Evid. 403. Additionally, Labona asserts that the court's allegedly erroneous pretrial evidentiary ruling induced him to waive his right to a jury trial. We find no merit to either claim.

We review a district court's evidentiary rulings for abuse of discretion. *United States v. Seymour*, 468 F.3d 378, 386 (6th Cir. 2006) (citing *United States v. Talley*, 164 F.3d 989, 998 (6th Cir. 1999)). A court abuses its discretion "when [it] relies on clearly erroneous findings of fact, improperly applies the law, or employs an erroneous legal standard, . . . or . . . when we are left with a definite and firm conviction that [it] committed a clear error of judgment." *United States v. Miner*, 774 F.3d 336, 348 (6th Cir. 2014) (internal quotation marks and citations omitted).

Before trial, the government notified Labona that it intended to introduce the testimony of Minors A, B, C, and D as evidence of Labona's prior acts of molestation. Labona moved to exclude the evidence, but the district court declared it admissible under Federal Rule of Evidence 414, which permits the prosecution to introduce a defendant's prior acts of child molestation when relevant to a child-pornography case. *See* Fed. R. Evid. 414(a), (d)(2)(B).

The court's evidentiary order also applied a Rule 403 analysis to the proposed testimony.[2] Although it acknowledged the danger of prejudice given that the crime of possessing child pornography, unlike molestation, does not necessarily entail "direct physical contact with a

---

[2] Labona also contends that the district court erred under Federal Rule of Evidence 414 but fails to develop this argument. He therefore waives his Rule 414 challenge. *United States v. Layne*, 192 F.3d 556, 566–67 (6th Cir. 1999) ("[I]ssues adverted to in a perfunctory manner . . . are deemed waived.") (citation and internal quotation marks omitted).

minor," the court held that the probative value of the minors' proposed statements outweighed the prejudicial effect under the factors described in *United States v. LeMay*, 260 F.3d 1018, 1027–28 (9th Cir. 2001). It found Labona's past molestation similar to the charged conduct (especially since both involved similarly aged girls); close in time to the incidents of possession and distribution; frequent enough to suggest a "pattern of behavior"; unaffected by any intervening circumstances; and "practically necessary" to prove mens rea because "Labona [would likely] assert he did not *intend* to perform the criminal acts alleged." *See id.* After the court's ruling, Labona waived his right to a jury.

At trial, the court reversed its pretrial evidentiary ruling once it heard Minor A's testimony. It noted that aside from statements about Labona's nickname (which tied him to the email account from which he contacted the undercover agent) and his showing pornography to Minor A, it would disregard the remarks about molestation because of their limited relevance to the possession or distribution charges. The district court also urged the prosecution to withhold the remaining minors' testimony.

Although Labona contends that Minor A's trial testimony was inadmissible due to its prejudicial nature and "weak" probative value, courts worry less about prejudicial effects in bench trials. *See United States v. Hall*, No. 98-6421, 2000 WL 32010, at *2 (6th Cir. Jan. 4, 2000) (per curiam) ("In bench trials, the application of the unfair prejudice portion of Rule 403 has been seen as an unnecessary and 'useless procedure.'" (citing 22 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice & Procedure* § 5213 (1978 & Supp. 1999))); *see also Gulf States Utils. Co. v. Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir. 1981) (finding that the unfair prejudice portion of Rule 403 "has no logical application to bench trials"). Additionally,

the court further minimized any prejudice when it disregarded Minor A's statements about molestation.

As for Labona's argument that the court's pretrial decision to admit the testimony of Minors A–D improperly induced his jury-trial waiver, Labona again shows no error. The district court acted within its discretion when it decided before trial to admit the evidence under Rule 403, reasoning that Labona would likely raise the defense that "he did not *intend* to perform the criminal acts alleged." At trial, the court left open the possibility of letting the minors testify if Labona in fact raised that defense, even as the court urged the prosecutor to otherwise withhold the testimonial evidence (which the prosecutor did).

Moreover, a court is well within its discretion to reverse a pretrial evidentiary ruling to account for the changing dynamics of a trial. *See United States v. Hurd*, No. 92-5988, 1993 WL 389944, at *3 (6th Cir. Oct. 1, 1993) (per curiam) ("Under Sixth Circuit precedent, a ruling on a motion *in limine* is no more than a preliminary, or advisory, opinion which falls entirely within the discretion of the district court. The trial court is permitted to change its ruling during the trial." (citing *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983))). And because he knowingly, voluntarily, and intelligently waived his right to a jury trial, Labona must accept the benefits and risks of his choice, including the possibility that the district court would later change its pretrial evidentiary ruling.

We thus find that the district court did not abuse its discretion.

**IV.**

Finally, Labona challenges his 480-month sentence—effectively a life sentence given his age—as substantively unreasonable because the district court gave "too much weight to the allegations of [his] alleged misconduct involving Minor[s] A, B, C and D." But considering the

district court's desire to protect the public, the seriousness of his crimes, his recent history of molesting children, and the lack of mitigating circumstances, Labona has not demonstrated any unreasonableness.

We review a district court's sentencing determination for substantive reasonableness "under a deferential abuse-of-discretion standard." *United States v. Dudeck*, 657 F.3d 424, 431 (6th Cir. 2011) (quoting *Gall v. United States*, 552 U.S. 38, 41 (2007)). "[A] sentence may be substantively unreasonable where the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent [18 U.S.C.] § 3553(a) factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Sedore*, 512 F.3d 819, 823 (6th Cir. 2008) (quoting *United States v. Liou*, 491 F.3d 334, 337 (6th Cir. 2007)). Here, Labona claims that the court placed too much weight on allegations of molestation, but does not specify which § 3553(a) factors this affects.

In applying the § 3553(a) factors, the district court found that his child pornography possession constituted "one of the most serious [it had] seen." It noted that Labona's possession and viewing of child pornography, itself a "serious crime [that] does a lot of harm," went beyond a single incident of misconduct. Rather, it made up one part of a longstanding pattern of acting out the sexual abuse depicted in the images he collected. In 1986, for example, he was convicted of taking "[i]ndecent [l]iberties" with his own sixteen-year-old daughter. And at the time of his arrest, officers caught him walking with a seven-year-old girl whom (investigators later learned) Labona had inappropriately touched and kissed on several occasions; slept next to multiple times; showed child pornography; and attempted to lure into engaging in sexual acts. Labona perpetrated similar acts with three of the girl's friends, all of whom were less than twelve years old.

Labona made his behavior even more reprehensible by spinning a "web of deceit" to mask his wrongdoing. As the district court discussed in the sentencing hearing, Labona took advantage of Jane Doe—a woman facing the hardships of poverty, the burden of raising a family, and a troubled marriage—by giving her money and "ingratiat[ing] himself . . . so he would have unfettered, unsupervised access to her children." He also employed a ruse to hide his child pornography in plain sight, telling the Doe family that he worked as a government agent—under the supervision of Agent Kidd and the FBI, no less—catching pedophiles. So effective was his deception that he convinced Doe and her husband to thwart a federal investigation and obstruct justice by destroying a second cell phone that contained more child pornography. Finally, the court highlighted Labona's brazen effort to shield himself from prosecution by pretending that the pornography on his phone "had been [f]oisted upon him with no effort on his own part."

The district court concluded that the depravity of Labona's offense, his inability to control himself, his willingness to con anyone in "pursuing his interest in child sexual contact," and the danger he presents to the public all warranted the maximum sentence allowable under federal law. *See* 18 U.S.C. § 2252(b)(1)–(2). We find the court's sentence substantively reasonable and thus discern no abuse of discretion.

## V.

We AFFIRM Labona's conviction and sentence.